# EXHIBIT A

Before the
FEDERAL COMMUNICATIONS COMMISSION
Washington, D.C. 20554

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| 10Band LLC ) | File No. 0497-EX-CR-2023 |
| Application for renewal of ) | |
| the Experimental License WI2XNX ) | |

To: Office of Engineering Technology

### Petition for Reconsideration

Skywave Networks LLC, by counsel, and pursuant to Section 1.106 of the Commission's rules, 47 C.F.R. §1.106, hereby requests reconsideration of the Office of Engineering and Technology's ("OET") grant of another renewal period to 10Band LLC to operate on 2-25 MHz.

10Band filed its application for renewal of the captioned license on August 8, 2023.[1] OET granted it nine days later, on August 17, 2023. There was no reasonable opportunity to comment on or informally object to the grant of the application. Because 10Band has completed its experiments and now uses the experimental authorization for regular day-to-day trading, it should not have been granted. OET should reconsider its grant and deny 10Band's renewal application.

In support, Skywave submits:

1. **Skywave's Interest**

Skywave develops technology that is capable of fixed, long-distance, non-voice communications in the 2-25 MHz Band. It is intensely interested in the operations in the 2-25 MHz Band. Further, its CTO, Kevin Babich, is an amateur radio licensee.[2] As such, he has experienced first-hand, the consequences of 10Band's experimental operations, as are more fully documented in the

---

[1] Section 5.71 of the Commission's rules specifies the License period and terms of renewal for Experimental Radio Licenses. Section 5.71(a)(2) specifies that a license may be renewed for an additional term not exceeding five (5) years upon an adequate showing of need to complete an experiment. 47 C.F.R. §5.71(a)(2). The captioned experimental license was first renewed September 21, 2021. *See* file no. 0507-EX-CR-2021.
[2] Amateur Radio License N9IAA, issued to Kevin J. Babich on November 16, 2018. Mr. Babich operates his HF amateur radio station within an area that may be affected by 10Band's operations at Elburn, Illinois.

comments in docket, RM-11953, the Shortwave Modernization Coalition's ("SMC") Petition for Rulemaking.

2. **The Experimental License**

Section 5.83 of the Commission's rules, 47 C.F.R. §5.83 notes the tentative status of experimental licenses. Section 5.83(a) provides that an experimental license does not confer any right to conduct an activity of a continuing nature. Section 5.83(b) further provides that the grant is subject to change or cancellation by the Commission at any time without notice or hearing, if in the Commission's discretion, the need for such action arises. Section 5.71(a)(2) of the Commission's rules, 47 C.F.R. §5.71(a)(2) provides that a license may be renewed … upon an adequate showing of need to complete the experiment. There is no renewal expectancy in an experimental license.

The history of the 10Band's experimental license is set forth below:

- 10Band's original application for a conventional experimental license was granted November 10, 2016 (File No. 0089-EX-CN-2016) for transmissions from the Chicago area to Europe ("Chicago/EU Link").[3]

- On February 12, 2020, an additional conventional experimental license, WK2XSY, was granted (application File No. 0074-EX-CN-2020) for transmissions from the Chicago area to Washington/Asia ("Chicago/Washington").

- On February 14, 2020, a third conventional experimental license, WK2XTI, was granted (application File No. 0077-EX-CN-2020) for transmissions from the Washington state area to Asia ("Washington/Asia").

- On February 14, 2020, a fourth conventional experimental license, WK2XTH, granted (File No. 075-EX-CN-2020) for transmissions from the New Jersey area to Europe ("NJ/Europe").

- In March of 2020, successful daily use for production operations began.

- On April 3, 2020, the Commission consented to 10Band's acquisition of facilities licensed under call sign WJ2XXI from Western Maritime Broadcast LLC.

---

[3] Under Section 5.71(a) of the Commission's rules, 47 C.F.R. §5.71(a), the application for renewal should not have been granted. Under the rule, an experimental radio licensee is allowed the regular license term of two years and one renewal term of up to five (5) years and no more. Under that calculation, 10Band's allowance expires once and for all on November 7, 2023.

2

- On May 1, 2020, 10Band LLC reported change of ultimate ownership documentation for 10Band.[4]

- On November 30, 2020, 10Band applied to modify the facilities acquired from Western Marine Broadcasting to use 24 kHz and 48 kHz bandwidths, consistent with 10Band's existing operations. The application was granted on December 8, 2020. (File No. 0268-EX-CM-2020)

- In 2020, ultra-low latency microwave links were established between transmit sites in the United States and nearby relevant exchanges.

- On September 1, 2021, 10Band filed for renewal of the conventional experimental license for the Chicago/EU link (File No. 0507-EX-CR-2021). On September 21, 2021, the Commission renewed the conventional experimental license without modification, subject to express conditions.

- On October 19, 2021, 10Band applied to modify its conventional experimental license into a "market trial" license while combining New Jersey and Washington state locations with the Chicago/EU link (File No. 0234-EX-CM-2021). The Commission granted the modified application on January 18, 2022.

- On November 25, 2022, 10Band filed an application to reorganize the Chicago/EU, New Jersey/EU, Chicago/Washington state, and Washington state/Asia links all under Call Sign WI2XNX for a market trial (File No. 0277-EX-CM-2022). The Commission granted the modified application on December 23, 2022.

- On August 8, 2023, 10Band LLC submitted renewal of its market trial experimental license with no changes (File No. 0497-EX-CR-2023) (the "Application"). The Commission granted the Application on August 17, 2023.

3. **Grant of the Application Exceeded the Renewal Period Available Under Section 5.71(a)**

The Experimental Radio License regime is set forth in Part 5 of the Commission's rules, 47 C.F.R §5.1 *et. seq.* Under Section 5.71(a)(2) of the Commission's rules, 47 C.F.R. §5.71(a)(2), the application for renewal should not have been granted. Under the rule, an experimental radio licensee is allowed one renewal term of up to five (5) years and no more. 10Band's license was renewed September 21, 2021. That was its one renewal term under Section 5.71(a)(2). Grant of the Application exceeded the bounds of the Commission's rule.

---

[4] The ultimate owners of 10Band's shortwave experimental licenses and low-latency microwave licenses, transferred their interests into trusts. *See* file no. 0028-EX-TU-2020.

**4.    Application**

No supporting information is included in the Application. Rather, 10Band relies on its Narrative Statement to justify renewal. In a slight nod to future "experimentation," 10Band asserts that grant of renewal of the experimental authority will allow 10Band additional time to complete its program of testing, understanding of the market potential, and refinement of the customer facing market data feed. It asserts that it needs two years to continue the experiments.[5] The 10Band Narrative Statement is insufficient to warrant renewal.

a.    *"Internal Use Case" Does not Require Market Studies*.

When considering whether an applicant is eligible for a renewal in the Experimental Radio Service,[6] Section 5.71(a) of the Commission's rules, 47 C.F.R §5.71(a) requires that the applicant provide an adequate showing of need to complete the experiment. 10Band asked the Commission to renew its Experimental License so that it may continue an almost-seven-year experiment to further understand market potential and refine its customer facing data feed.

This justification contrasts with the assertions in the SMC Petition (which 10Band cited in the Application). Particularly, on page 9 of the SMC Petition, the SMC notes that its members' proposed use case contemplates only private internal communications. Because only private internal communications are contemplated, there is no "customer" market to explore; there is no need to refine its customer facing data feed.

The Narrative Statement cannot support renewal because it relates only to services to "customers" and by its own assertions in the SMC petition, 10Band does not propose service to customers.

---

[5] Somehow, the Petition for Rulemaking filed by the Shortwave Modernization Coalition ("SMC") appears to have been a precondition for grant of 10Band's renewal of its experimental authority. *See* paragraph 4 of 10Band's Narrative Statement. As such, the precondition links information revealed through said proceedings to the Application..

[6] Section 5.5 of the Commission's rules, 47 C.F.R. §5.5, defines Experimental Radio Service as a service in which radio waves are employed for purposes of experimentation in the radio art for purposes of providing essential communications for research projects that could not be conducted without the benefit of such communications.

4

b. *Real-world Assessments; Metrics*

In support of its request for another renewal term to continue its almost-seven-year-old experiment, 10Band offers real-world assessments conducted by academic researchers and metrics about content, quality and timeliness of the received data. It references real-world assessments and metrics, but it does not provide them.

Further 10Band asserts that delivering time-sensitive financial market data across a low latency HF link presents unique challenges such as lossy, low-bandwidth data services. 10Band says that it continues to experiment with HF technology and signal processing techniques to mitigate such issues. Empirical evidence derived from time-stamped, market data proves that the aforementioned challenges were overcome in March of 2020.

5. **The Experiment**

An experimental licensee's daily operation of the Licensed facilities indicates that the experiment is over. 10Band is operating the experimental facilities as a regular full-time means of transmitting financial information to gain an edge in the financial markets. For this reason, the Commission should not have granted renewal of 10Band's experimental license.

This is not unlike the situation in *Wilfredo G. Blanco-Pi*, 32 FCC Rcd 3100 (2017), in which the Commission found that because the experimental licensee was using the experimentally licensed facilities on a daily basis, in his regular operations, he had completed his experiments. Without any apparent further experimental benefit to attain production level status, renewal of the experimental license was not justified.

5. **Shortwave Modernization Coalition**

In its narrative, 10Band mentions the Shortwave Modernization Coalition ("SMC") Petition for Rulemaking recently filed with the Commission as fulfilment of a commitment to the Commission. The SMC Petition for Rulemaking received over 800 comments, mostly deriding the proposal as a brazen spectrum land grab that would benefit financial traders and cause destructive interference to incumbents

and adjacent services.[7] 10Band's implementation (using wide bandwidths and relaxed emission masks) closely mirrors the heavily criticized features of the Petition. It is stunning that 10Band would attempt to use the Petition for Rulemaking as justification for grant of a renewal of its Experimental License, when the commenters have suggested that the current experimental operations have been interfering with adjacent services. 10Band fails completely to address the allegations of interference. For that reason alone, the application should be denied.

  6. **Layers of Users**

In 10Band's narrative to support its market trial, it states that it has "secure[d] an agreement with a provider of financial data with established customer relationships for potential trial participants and with the requisite market data licenses. This network provider will serve as the interface between 10Band and trial participants and will help ensure anonymity of survey feedback from participants." Representations from the SMC Petition reveal that 10Band's related companies, Jump Trading and Virtu Financial, through joint venture, are 10Band's "customers" who share NLN Holdings and its subsidiary Newline Networks ("NLN") for the provision of financial services data. Under Section 5.602(c) of the Commission's rules, 47 C.F.R. §5.602(c), NLN as the user of the experimental facilities (providing services to the related Jump Trading and Virtu Financial) must have its own experimental license to operate on facilities currently licensed to 10Band. Clearly, NLN must have its own experimental license to provide the services to Jump Trading and Virtu Financial. Because 10Band allowed a related company's unlicensed operations on the experimentally licensed facilities, the Application must be reconsidered and denied.

---

[7] It appears that extended and expansive use of experimental licenses for production purposes is driving deliriously flawed rulemaking proposals (e.g., regressive interference proposals and spectrum hogging) that are not in accordance with Commission principles nor are they in the long-term interest of financial industry participants outside of the SMC.

### 7. Upon Reconsideration the Application Should be Denied

10Band's application for renewal of WI2XNX should never have been granted. Section 5.71(a)(2) allows for a single renewal period of five (5) years. As is clear from the license timeline set forth, this is not 10Band's first renewal request and, if granted, it would extend the term of the experimental license beyond that authorized by Section 5.71(a)(2).

Additionally, 10Band's assertions set forth in the Narrative Statement filed with its renewal application are in direct contradiction with its assertions set forth in the SMC Petition and acknowledged by 10Band's notation of the SMC Petition in the Narrative Statement. The Narrative Statement presupposes that 10Band will serve customers; the SMC Petition states clearly that the use case for the experimental facilities is internal use only.

Finally, 10Band is no longer experimenting. For years, 10Band has used and continues to use the facilities day in and day out to conduct financial trades. After years of highly profitable production trading and market dominance, a limited "market trial" is a *non sequitur*. No further experimentation is needed. Under the rule established in *Blanco-Pi,* renewal of the experiment is not justified.

In light of the foregoing, Skywave asks that the Commission reconsider and deny 10Band's application for renewal of the Experimental License, WI2XNX.

Respectfully submitted,

SKYWAVE NETWORKS LLC

By: _____
Marjorie K. Conner
Its Counsel
(703) 626-6980
mkconner@mkconnerlaw.com

September 18, 2023

7

Declaration of Timothy J. Eloe

CEO – Skywave Networks LLC

I serve as Chief Executive Officer of Skywave Networks LLC. I have reviewed the foregoing Petition for Reconsideration.

I hereby verify that the facts asserted in the Petition for Reconsideration are true and correct to the best of my knowledge, information, and belief. The assertions are proffered under penalty of perjury.

_____

Timothy J. Eloe

Chief Executive Officer

CERTIFICATE OF SERVICE

      I hereby certify that on this 18th day of September 2023, I transmitted a true, correct, and complete copy of the foregoing Petition for Reconsideration by electronic mail to:

William K. Keane, Esq.
Duane Morris LLP
901 New York Avenue, NW
Suite 700 East
Washington, DC 20001-4795
kkeane@duanemorris.com

_____
Marjorie K. Conner