# EXHIBIT B

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, DC 20554**

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| 10Band LLC ) | File No. 0497-EX-CR-2023 |
| Application for Renewal of ) | |
| Experimental License WI2XNX ) | |

To: Office of Engineering and Technology

**OPPOSITION TO PETITION FOR RECONSIDERATION**

10Band LLC ("10Band"), by its counsel, hereby opposes the Petition for Reconsideration ("Petition") filed by Skywave Networks, LLC ("Skywave"). Skywave seeks reconsideration of the Office of Engineering and Technology's ("OET's") grant of 10Band's renewal application. As shown below, the Petition is procedurally deficient, and even if it were able to be considered, it lacks substantive merit. OET's August 17, 2023 grant of the renewal application (the "License") is consistent with the Commission's rules and past practice. Accordingly, the Petition should be denied, if not dismissed.

**I.     The Petition is Procedurally Deficient.**

Skywave must demonstrate compliance with basic requirements for filing a petition for reconsideration. It fails to meet that test in two respects and should be dismissed.

**A.  Skywave Fails to Show an Adverse Effect and Therefore Lacks Standing.**

If a petition for reconsideration is "filed by a person who is not a party to the proceeding, it shall state with particularity the manner in which the person's interests are adversely affected by the action taken . . . ."[1]  This is akin to a requirement that Skywave have standing to file the

---

[1] 47 C.F.R. § 1.106(b)(1).

Petition.[2]  While Skywave has alleged that "[t]here was no reasonable opportunity to comment on or informally object" to 10Band's application prior to grant, this alone does not convey standing; Skywave's own interests must actually be adversely affected by the Commission action.[3]

However, Skywave never alleges that grant of the License actually adversely affects it. Skywave asserts it is "intensely interested" in operations within the 2-25 MHz band, but stops short of claiming harm from 10Band's operation within the same band.

Skywave also claims that its chief technology officer, Kevin Babich, has "experienced firsthand, the consequences of 10Band's experimental operations, as are more fully documented in the comments in docket, RM-11953, the Shortwave Modernization Coalition's ("SMC") Petition for Rulemaking."[4]  But once again, not only does the Petition itself fail to identify those "consequences" (much less assert any harm caused thereby), but it further fails to even cite where in the docket of that unrelated matter it allegedly shows that Mr. Babich was harmed as a consequence of 10Band's experimental operations.  These allegations do not come close to showing that Skywave has suffered a "direct injury" as a result of the License grant -- a key element of the Commission's standing analysis -- or allege that reversing the grant will prevent or redress any injury.[5, 6]

---

[2] *In re Metro. Transp. Auth. Proposed Order & OOR*, 31 FCC Rcd. 1436, 1440-41 (2016).

[3] *Id*.

[4] Petition at 1-2.

[5] *Metro. Transp. Auth.*, 31 FCC Rcd. at 1440-41.

[6] To the extent the asserted consequences relate to the SMC Petition for Rulemaking, that is a separate matter in which Skywave has already filed comments addressing its concerns.  Moreover, it may also be noted that petitioners may not sit back with vague and conclusory allusions to consequences for purposes of standing, and only later attempt to explain what those allegations mean.  *See In re Matters of Falcon First Commc'ns, L.P.*, 14 FCC Rcd. 7277, 7282 (1999) (a "tender of new, unsupported factual information for the first time in [a] reply … comes too late for Bureau consideration").

**B.  The Petition is Procedurally Deficient in Other Respects.**

Perhaps the closest Skywave gets to a claim of adverse effect is its statement that Mr. Babich "operates his HF amateur radio station within an area that may be affected by 10Band's operations at Elburn, Illinois."[7]  While this claim does not confer standing for the reasons stated above, it also fails for additional reasons.

First, Mr. Babich is not the petitioner; Skywave is.  Skywave and Mr. Babich are two different legal "persons," and Skywave cannot piggyback off of Mr. Babich's standing (if he were to show he actually has standing).[8]

Second, a conclusory allegation that amateur radio operations "may be affected" with no further documentation or evidence of harm does not show a "concrete and particularized" injury for purposes of standing.[9]  On the contrary, alleging that something "may" happen is a classic example of a "conjectural or hypothetical" harm.[10]

And third, any petition that "[o]mit[s] information required by these rules to be included . . . such as the affidavit required by paragraph (e) of [§ 1.106] (relating to electrical interference)" is an example of a petition that "plainly do[es] not warrant consideration by the Commission" and which should be dismissed or denied.[11]  Here Skywave seems to rest claims of "adverse effect" on the notion that Babich's amateur operations "may" be affected by interference from 10Band.  However, Skywave has not provided a qualified engineer's affidavit, or any information at all for that matter, showing "that electrical interference will be caused to [Babich's]

---

[7]  Petition at n.2.
[8]  *See, e.g.,* 47 C.F.R. § 5.5 ("*Person.* An individual, partnership, association, joint stock company, trust, corporation, or state or local government.").
[9]  *Metro. Transp. Auth.,* 31 FCC Rcd. at 1441.
[10]  *Id.*
[11]  47 C.F.R. § 1.106(p), (p)(6).

station . . ." as required by subsection (e) of Rule 1.106.[12]  This deficiency likewise warrants dismissal of the Petition.

## II.  Renewal of the License Was Not Time-Barred.

Skywave's argument that OET could not renew the License beyond November 1, 2023 lacks merit.

Preliminarily, we note that -- unlike the case with Rule 5.71(d) covering Spectrum Horizon licenses -- the plain language of Rule 5.71(a), (b), and (c) contains no explicit limitation on the number of renewals available for conventional, program, medical testing, compliance testing, and broadcast experimental licenses.  That a conventional license "may be renewed for an additional term" does not mean that it cannot be renewed a second time "for an additional term."  Rule 5.71(d), which covers Spectrum Horizons experimental licenses, states that licenses "may not be renewed."  Contrasting Rule 5.71(a) against Rule 5.71(d), it is apparent that when the Commission intends to limit the renewability of an experimental license, it uses very clear language to do so.

Furthermore, we note that when the Commission made significant changes to Rule 5.71 in 2013, it noted, "Currently, the rules allow for an experimenter to apply for the conventional experimental license to cover a single or several closely related experiments for 2-5 year periods with options for renewal**s** for up to 5 years."[13]  The Commission did not rescind that interpretation in the 2013 Report and Order or in any subsequent modifications to Rule 5.71.  In fact, when the Commission adopted requirements for program experimental licenses, it expressly noted that program licenses could also "be granted for five year, renewable term**s**," and that availability of

---

[12] Skywave's generalized reference to comments filed by amateurs in the rulemaking does not suffice for demonstrating that Skywave or Babich have suffered interference from 10Band's transmissions.

[13] *In the Matter of Promoting Expanded Opportunities for Radio Experimentation and Market Trials*, FCC 13-15, at ¶ 20 (2013) (emphasis added).

multiple renewals "followed directly from requirements already in place for conventional experimental licenses."[14]

Moreover, Skywave's argument is premised on its claim that "10Band's license was renewed September 21, 2021." However, when 10Band filed its application in October 2021, it was to modify the license in order to conduct the market trial.[15] In response, OET issued a new, modified license on January 18, 2022 authorizing the market trial.[16] The recent grant of the renewal application on August 17, 2023 amounts to the first renewal of the modified license, and should be viewed as within the 7- to 10-year term authorized by Rule 5.71, even as that rule is (mis)interpreted by Skywave.

Finally, in practice, OET extends licenses beyond ten-year terms when it is reasonable to do so. *See*, *e.g.*, Motorola Solutions, Inc., Application for Renewal of Experimental License, File No. 0502-EX-CR-2021 (granted Aug. 27, 2021) (granting license renewal application for a cumulative period of thirteen years); AT&T Corp., Application for Renewal of Experimental License, File No. 0116-EX-RR-2015 (granted Mar. 4, 2015) (granting license renewal application for a cumulative period of twelve years). It was likewise reasonable for OET to grant 10Band's renewal.[17]

---

[14] *Id*. at ¶ 47.

[15] *See* Narrative Statement, Experimental Authorization Application - Modification, File No. 0234-EX-CM-2021 (Oct. 21, 2021).

[16] Experimental License, File No. 0234-EX-CM-2021, granted January 18, 2022 to expire November 1, 2023. The market trial application in effect superseded the September 21, 2021 grant.

[17] For the sake of completeness and if, despite all of the above, OET were prepared to consider Skywave's view of Rule 5.71, it could, and should, grant 10Band a waiver pursuant to Rule 1.925. A waiver is appropriate where the "underlying purpose of the rule(s) would not be served or would be frustrated by application to the instant case, and that a grant of the requested waiver would be in the public interest." 47 C.F.R. Section 1.925(b)(3)(i). 10Band explained that its experimentation could lead to "more efficient utilization of the 2-25 MHz spectrum." Narrative Statement, File No. 0497-EX-CR-2023. Applying Rule 5.71 as advocated by Skywave would frustrate the

### III.     10Band's Experiments Are Not Complete.

Skywave claims that 10Band has "completed its experiments and now uses the experimental authorization for regular day-to-day trading." It further argues that, "Empirical evidence derived from time-stamped, market data proves that the aforementioned challenges were overcome in March of 2020." These claims -- which are unsupported by any evidence beyond Skywave's bald assertion -- are baseless.

For openers, Skywave fails to provide any of the referenced "market data," or any analysis of that data showing that the "challenges were overcome," and for a good reason -- 10Band's experimentation is not complete. As stated in its Narrative Statement accompanying its request for renewal of the License, 10Band has encountered challenges in terms of both technical factors such as bandwidth and reliability, as well as end-user challenges such as the use of a lossy data service in this ionospheric environment, and it "continues to experiment with HF technology and signal processing techniques to mitigate such issues."[18]

Skywave's citation to *In re Wilfredo G. Blanco-Pi* is unavailing. In that case, the experimental licensee "ma[de] it clear that he seeks to retain the Stations, not based on any further experimentation, but rather on their value as full-time re-broadcasters of . . . programming . . . ."[19] By contrast, 10Band's experimentation is ongoing.

10Band explained its market trial in detail, and it determined to modify its license after consultation with OET staff. Moreover, its program of experimentation appears similar to that

---

purpose of the experimental radio service. 10Band's ongoing experiment -- which includes tests of the usefulness of the HF band for the intended purpose, and enhancement of customer-facing data feeds via a market trial -- directly advances stated purposes of the experimental radio service as stated in Rule 5.1(b).

[18] Narrative Statement, File No. 0497-EX-CR-2023.

[19] 32 FCC Rcd. 3100, 3104 (2017).

approved by the OET for other parties.[20]  10Band has also fulfilled its representation that continued testing would be accompanied by a petition for rulemaking to allow regular licensed operation.

## IV.    Skywave Confuses the SMC Petition for Rulemaking with 10Band's Experimentation.

Citing SMC's Petition for Rulemaking, Skywave argues that 10Band's experimental work contemplates "only private internal communications," and thus, "there is no 'customer' market to explore."[21]  While 10Band's experimentation (and that of other SMC members) has provided a real-world foundation for adoption of proposed changes to Part 90, the ongoing experimentation conducted with industry participants and leading academics will enable 10Band to resolve for itself certain HF performance and digital signal processing issues.  Furthermore, Skywave's argument fails to consider the simple, real-world fact that a petition for rulemaking for one potential use case (i.e., internal communications) does not preclude further experimentation and market trials in other areas (i.e., a customer market).  The HF-band issues explored by 10Band affect delivery of low-latency data not just for financial firms but potentially other industries as well.[22]  In other words, there is nothing inconsistent between 10Band's License and the SMC Petition.

---

[20] *See, e.g.*, 3DB Communication Inc., File No. 0453-EX-CR2023 (granting fourth license renewal application on August 17, 2023 for a cumulative period of eight years to "advance high-frequency hardware, software, and transmission technologies"); Skycast Services LLC, File No. 0725-EX-CR-2022 (granting third license renewal application on January 4, 2023 for a cumulative period of nine years to permit applicant to continue to conduct "(i) scientific or technical radio research; (ii) technical demonstrations of equipment or techniques; and (iii) the development of radio technique, equipment, operational data, and engineering data").

[21] *Id*. at 4.

[22] *See* Narrative Statement for File No. 0497-EX-CR-2023 ("Participating academic researchers and a limited number of market trial participants have provided real-world assessments of our technology's suitability for this purpose compared to other means of delivery.  Metrics include the content, quality, and timeliness of the received data.  Delivering time-sensitive financial market data across a low latency HF link presents unique challenges in terms of both technical factors such as bandwidth and reliability, as well as end-user challenges such as the use of a lossy data service in this ionospheric environment.  10Band continues to experiment with HF technology and signal processing techniques to mitigate such issues.").

## V.     Conclusion

Skywave has failed to show standing to seek reconsideration of the License grant, and its Petition is procedurally deficient under Rule 1.106.  Accordingly, the Petition for Reconsideration should be dismissed.  Should OET nevertheless choose to consider the Petition on the merits, the Petition fails to set forth any basis for reconsidering grant of 10Band's renewal and it should be denied.

Respectfully submitted,

**10BAND LLC**

By: _____
William K. Keane
Drew T. Dorner
Duane Morris LLP
901 New York Avenue N.W., Suite 700 East
Washington, DC 20001
(202) 776-7800

*Its Counsel*

September 28, 2023

Attachment A
(Declaration)

DocuSign Envelope ID: EB920BA8-B57B-4C41-9347-06A0804E9F60

## DECLARATION

I, John P. Madigan, declare:

1.      I am competent to provide this Declaration.

2.      My business address is New Line Networks LLC, 600 West Chicago Avenue, Suite 640, Chicago, IL 60654.

3.      I have been employed by Jump Trading Group ("Jump") as a Technologist since 2017, and in that role, I provide services to and on behalf of 10Band LLC ("10Band").

4.      In connection with my role, I am familiar with, and am responsible for, implementation of 10Band's high frequency facilities.

5.      I have read the Opposition to Petition for Reconsideration ("Opposition") to which this Declaration is attached.

6.      Based on my personal knowledge, the factual representations in the Opposition are true to the best of my belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:  September 28, 2023

John P. Madigan

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September, 2023, I transmitted a true, correct, and

complete copy of the foregoing Opposition to Petition for Reconsideration by electronic mail to.

Marjorie K. Conner
Attorney at Law
2413 N. Dearing Street
Alexandria, VA 22302
mkconner@mkconnerlaw.com

Drew T. Dorner