# EXHIBIT 54

INTERNATIONAL CHAMBER OF COMMERCE
COURT OF ARBITRATION

| | |
|---|---|
| GLOBAL COLOCATION SERVICES LLC,<br><br>             Claimant,<br><br>             v.<br><br>HIBERNIA EXPRESS (IRELAND) LIMITED,<br><br>             Respondent. | **REQUEST FOR ARBITRATION** |

Claimant Global Colocation Services LLC ("Claimant" or "Global Colocation"), by and through its attorneys Paul, Weiss, Rifkind, Wharton & Garrison LLP, respectfully seeks arbitration of its contractual dispute with Hibernia Express (Ireland) Limited ("Respondent" or "Hibernia") arising out of Hibernia's failure to comply with certain terms of the December 15, 2014 Express Service Master Services Agreement by and between Hibernia and Global Colocation (the "Agreement"). (A copy of the Agreement is attached hereto as Exhibit A.)

## INTRODUCTION

1. Through this arbitration, Claimant Global Colocation seeks a declaratory judgment that Global Colocation is not in Default under Section 11.1 of the Agreement and, thus, the Agreement may not be terminated unilaterally by Hibernia, as Respondent is now threatening to do.

2. Global Colocation, together with its parent KCG Holdings, Inc. and other affiliates (hereinafter, "KCG"), is a leading market-maker on exchanges worldwide. In 2014, Global Colocation contracted with Respondent to gain access to Hibernia's new high-speed transatlantic cable, which KCG sought to use to send critical,

time-sensitive information and data between its trading operations in the United States and Europe to facilitate KCG's ability to trade in both jurisdictions.

3. Global Colocation paid ▓▓▓▓▓▓▓ and, since 2014, has paid and continues to pay Respondent approximately ▓▓▓▓▓▓▓ for access to the cable.  Under the terms of the Agreement, Global Colocation is guaranteed access to Respondent's cable through at ▓▓▓▓▓▓▓ unless Global Colocation is in Default under the specific provisions set forth in Section 11.1 of the Agreement, in which case Hibernia is permitted to, among other things, terminate the Services it offers under the contract (*see* Section 11.2 of the Agreement).

4. Notwithstanding that Claimant is clearly *not* in Default under any of the provisions set forth in Section 11.1, Respondent has nonetheless indicated that it will—in plain breach of the terms of the Agreement—terminate the Agreement unilaterally in December, thereby completely shutting off KCG's access to Hibernia's high-speed transatlantic cable and significantly handicapping KCG's ability to trade between the United States and Europe.

5. Respondent's threats to do so are completely unjustified and without basis under the express terms of the Agreement and, if carried through, will likely cause extensive damage to KCG's operations, profitability and business reputation.

6. Accordingly, to prevent this improper termination of the Agreement by Respondent and the serious damages that would result, Global Colocation now invokes the dispute resolution procedures agreed to in the Agreement and brings this action seeking: (1) a declaratory judgment that Global Colocation is not in Default under the specific provisions set forth by Section 11.1 of the Agreement and, thus, Hibernia

2

may not unilaterally terminate the Agreement and shut off Claimant's access to Hibernia's high-speed transatlantic cable; (2) an award of costs (including the costs of bringing this arbitration) and attorneys' fees; and (3) such other and further relief as the Arbitrators deem just and proper.

**PARTIES**

**Claimant**

7. Claimant Global Colocation Services LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in New York. Global Colocation is an indirect subsidiary of KCG Holdings, Inc. Specifically, Claimant acts as an intercompany service provider for KCG that contracts for, among other things, transatlantic data transfer services to facilitate KCG's global trading business.

8. All correspondence and notices to Global Colocation should be delivered to its counsel at the following address:

> Andrew G. Gordon, Esq.
> Paul, Weiss, Rifkind, Wharton & Garrison LLP
> 1285 Avenue of the Americas
> New York, New York  10019-6064
> Tel.:  (212) 373-3543
> Fax:  (212) 492-0543
> E-mail:  agordon@paulweiss.com

with a copy to:

Justin Waldie, Esq.
Senior Vice President and General Counsel
Virtu Financial Inc.
300 Vesey Street
New York, NY 10282
Tel: (212) 418-0113
Email: jwaldie@virtu.com

**Respondent**

9. Respondent Hibernia Express (Ireland) Limited is a company organized under the laws of Ireland, with its principal place of business in Ireland.

10. All correspondence and notices to Hibernia should be delivered to its counsel at the following address:

Scott D. Livingston, Esq.
Marcus & Shapira LLP
One Oxford Centre, 35th Floor
301 Grant Street
Pittsburgh, PA 15219-6401
Tel: (412) 471-3490
Fax: (412) 391-8758
E-mail: livingston@marcus-shapira.com

with a copy to:

c/o Hibernia Atlantic U.S. LLC
d/b/a Hibernia Networks
25 De Forest Avenue, Suite 108
Summit, NJ 07901
Attention: General Counsel

4

### THE AGREEMENT'S ARBITRATION CLAUSE
### AND CLAIMANT'S APPOINTMENT OF AN ARBITRATOR

11. Section 32.2 of the Agreement provides:

Any dispute in relation to this Master Services Agreement will be referred to and finally resolved by arbitration in New York in accordance with the rules of the International Chamber of Commerce ("ICC Rules") for the time being in force, which rules are deemed incorporated by reference in this clause. The tribunal will consist of three arbitrator(s) to be appointed by the Chairman of the ICC. The language of the arbitration will be English.

12. Where, as here, "the parties have agreed that the dispute shall be resolved by three arbitrators," Article 12 of the ICC Rules provides that "each party shall nominate in the Request and the Answer, respectively, one arbitrator" and "the third arbitrator, who will act as president of the arbitral tribunal, shall be appointed by the Court."

13. Claimant hereby nominates former federal district court judge, Hon. Barbara S. Jones, as its arbitrator. The Hon. Barbara S. Jones may be contacted at:

Hon. Barbara S. Jones
Bracewell LLP
1251 Avenue of the Americas
New York, NY 10020-1100
Tel: (212) 508-6105
Fax: (212) 938-3804
E-mail: barbara.jones@bracewell.com

### THE NATURE AND CIRCUMSTANCES OF THE DISPUTE

### KCG's Business Requires Access to High-Speed Technology

14. KCG is a leading financial firm that uses cutting-edge technology to act as a market-maker and generate liquidity that helps to create more efficient markets and provide trading and technology solutions to clients. A market-maker is "a firm that

5

stands ready to buy and sell a particular stock on a regular and continuous basis at a publicly quoted price." (*See* U.S. Securities and Exchange Commission, Fast Answers, https://www.sec.gov/fast-answers/answersmktmakerhtm.html (accessed October 4, 2017).) In other words, as a market-maker, KCG acquires shares of a security to facilitate trading in the market by simultaneously quoting both a buy and a sell price for that security.

15. KCG places millions of orders, resulting in millions of trades per day, all across global markets in order to provide liquidity to those markets. Specifically, KCG trades in equities, commodities, currencies and other financial instruments. It also provides technology and trading solutions to its clients.

16. As such, KCG's business fully depends on its being able to trade across global markets at least as fast as any other market participant. KCG relies on leading technology to quickly and efficiently conduct millions of trades each day in different markets across the globe.

17. To send critical, time-sensitive information and data between its trading operations in the United States and Europe, KCG currently relies on the Hibernia cable. Access to Hibernia's cable, through Global Colocation's contract with Respondent, is a critical component of KCG's ability to compete efficiently and effectively.

**The Hibernia Cable**

18. In 2014, Hibernia introduced a new high-speed (or "low latency") transatlantic cable (the "Cable"). Hibernia represented that its Cable would have the

6

lowest latency—in other words, the fastest connection—of any existing transatlantic system between financial markets in the New York metropolitan area and London.[1]

19.  In order to facilitate its high-speed trading in Europe, Global Colocation contracted with Hibernia for access to the Cable. Thus, on December 15, 2014, Global Colocation entered into the Agreement with Hibernia to secure access to the Cable for KCG's trading operations.

20.  The Agreement expressly contemplated that access to the Cable would be available to all of Global Colocation's "affiliates."

21.  Thereafter, KCG used the Cable—and continues to use the Cable to this day—to send information and data across the Atlantic that result in tens of thousands of trades per day between New York and Europe. In short, the Cable has become a key part of KCG's technology infrastructure.

22.  Without access to the Cable, KCG would be forced to shut down a significant portion of its trading activity with financial markets in Europe, which would have a significant impact on revenue and expose it to potential legal, regulatory and reputational risks.

**The Terms of the Agreement with Hibernia**

23.  Under the Agreement, which is governed by New York law, Hibernia agreed to provide Global Colocation with "low latency transport services" between the United States and Europe. (*See* Agreement, Section 7.1.) The term of Global Colocation's access to the Cable is through ▮▮▮▮▮.

---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

24. Under Section 2 of the Agreement, the Agreement "shall remain in effect until the expiration of the last Service provided hereunder, unless earlier terminated as provided in this Master Services Agreement."

25. Sections 11.1 and 11.2 of the Agreement, in turn, provide that Respondent may only terminate the Agreement before November 2020 if Claimant is in Default, as that term is defined by Section 11.1 of the Agreement. Specifically, Section 11.1 states in relevant part:

> A default shall exist with respect to a Service if: (a) Customer fails to pay any undisputed amount due with ten (10) Business Days after written notice specifying such breach; (b) in the case of any other material breach, either party fails to cure such breach within (10) Business Days (a default shall not have occurred so long as the relevant party has commenced to cure within said time period and thereafter diligently pursues such cure to completion), (c) either party makes a material misrepresentation in any submission to the other party, (d) an Event of Insolvency occurs with regard to a party, or (e) the Service fails to conform with the SLA.

26. Section 11.2 provides as follows: "In the event of any default, the non-defaulting party may immediately and without further notice avail itself of one or more of the following remedies: . . . (b) terminate the Service . . . ."

27. Significantly, Global Colocation is not in Default pursuant to Section 11 of the Agreement, nor has it been in Default. Accordingly, because no Default exists, Hibernia may not terminate the Agreement under Section 11.2.

28. Respondent's threats to shut off Global Colocation's access to the Cable by terminating the Agreement are thus completely unjustified (and plainly without basis) under the express terms of the Agreement.

8

**Virtu Financial Provides Notice of Termination and Hibernia Threatens to Wrongfully Terminate Global Colocation's Access**

29. In fact, Respondent's threats to terminate the Agreement with Global Colocation actually have nothing to do with Global Colocation and have everything to do with generating leverage in a separate contractual dispute with Virtu Financial, Inc. ("Virtu"), which acquired KCG (and Global Colocation) in July 2017.

30. Virtu is another leading worldwide market-maker and, prior to its acquisition of KCG, had also entered into its own agreement with Hibernia. Similar to the Agreement at issue here, in Virtu's agreement, Hibernia agreed to provide Virtu with access to the Cable.

31. Under the terms of Virtu's agreement, however, Hibernia expressly agreed to allow Virtu to terminate its agreement for access to the Cable if any person offered a service that is equal to or faster than the service provided by Hibernia through the Cable.

32. On August 9, 2017, Virtu provided notice to Hibernia of an available technology which was as fast as or faster than the Cable, provided the requisite documentation demonstrating such, and notified Hibernia that it would be terminating its agreement with Respondent on or about December 7, 2017.

33. In response, Hibernia informed Virtu that it disagreed that Virtu was permitted to terminate its agreement. However, instead of invoking the arbitration provision in that agreement to adjudicate that dispute, Respondent instead attempted to coerce Virtu to withdraw its termination notice by threatening to inflict serious damages on KCG by terminating its Agreement with Global Colocation. Indeed, by letter dated August 31 (attached hereto as Exhibit B), Hibernia stated:

9

> if Virtu does not withdraw its request for early termination, Hibernia will (1) forgo the 120-day cure period in order for Virtu to promptly move all its services to Virtu's alternative technology and (2) treat Virtu's termination notice as a request to terminate made on behalf of all its affiliates and, accordingly, on September 15, 2017, Hibernia will terminate service to Virtu and Global Collocation Services LLC which recently became a Virtu affiliate.

34. Of course, Global Colocation never requested to terminate the Agreement, and Hibernia never provided any explanation or justification as to why it was construing Virtu's termination notice under a separate contract "as a request to terminate made on behalf of all its affiliates" pursuant to the Virtu agreement or the Agreement at issue here.

35. Furthermore, nothing in the Agreement (or the Virtu agreement for that matter) permits Respondent to carry through with its threats and terminate the Agreement.

36. KCG will suffer significant damages if its access to the Cable is turned off imminently. Not only does KCG use the Cable to conduct significant trading, it also has contractual commitments to serve as a market-maker in European markets and exchange trade products. Without access to the Cable, KCG expects that it would no longer be able to satisfy contractual market-making services in a commercially viable manner. It also faces potential reputational harm, lost goodwill, and lost profits as high as hundreds of thousands of dollars per day.

37. Given the potential serious harm to KCG's business that could ensue from its losing access to the Cable, Global Colocation has engaged in discussions with Respondent seeking to avoid termination. Those discussions, however, have not been successful. Hibernia has made clear that once Virtu ceases to make payments under

10

its agreement with Hibernia, Respondent will terminate the Agreement with Global Colocation (and thus disconnect KCG's access to the Cable).

38. Pursuant to the notice previously provided by Virtu to Hibernia, Virtu's agreement is being terminated on December 7, 2017 and payments under Virtu's agreement will end as of that date. On that date, there is a real and serious likelihood that Hibernia will respond to Virtu's invocation of its contractual rights to terminate its contract with Hibernia by terminating the Agreement.

39. But, Virtu's termination of its agreement with Hibernia is not a ground for Default under the specifically enumerated provisions found in Section 11.1 of the Agreement. Accordingly, Global Colocation seeks a declaratory judgment that because Claimant is not in Default of any of its obligations under the Agreement, Hibernia is not permitted to terminate the Agreement unilaterally.

## FIRST CLAIM FOR RELIEF
**(Declaratory Judgment that Respondent May Not Terminate Access to the Cable)**

40. Claimant Global Colocation repeats and realleges paragraphs 1 through 39 above.

41. Global Colocation and Hibernia entered into a valid and binding contract providing Global Colocation with access to the Cable under the terms of the Express Service Master Services Agreement.

42. Under the Agreement, Hibernia is required to provide access to the Cable to Global Colocation and its affiliates.

43. Global Colocation has performed, and continues to perform, its obligations under the Agreement.

44. Global Colocation is not in Default under Section 11.1 of the Agreement. As such, Respondent may not unilaterally terminate the Agreement pursuant to Section 11.2 of the Agreement.

45. Hibernia has indicated its unequivocal intent to repudiate the Express Service Master Services Agreement and cease providing Global Colocation access to the Cable.

46. KCG will suffer substantial injury if Hibernia terminates Global Colocation's access to the Cable, resulting in reputational harm, lost goodwill and lost profits. Lost profits on market-making are difficult to quantify and subject to uncertain future conditions including market volumes and volatility, but could be as high as hundreds of thousands of dollars per day.

47. Global Colocation is entitled to a declaratory judgment that Claimant is not in Default under Section 11.1 of the Agreement and that Respondent

12

therefore may not breach the Agreement and terminate Global Colocation's access to the Cable.

## REQUEST FOR ARBITRATION AWARD

WHEREFORE, Global Colocation respectfully requests that the Panel award it:

(a) a declaratory judgment that Global Colocation is not in Default under Section 11.1 of the Agreement and that Respondent therefore may not breach the Agreement and unilaterally terminate Global Colocation's access to the Cable;

(b) costs (including the costs of bringing this arbitration) and attorneys' fees; and

(c) any such other and further relief as the Arbitrators deem just and proper.

13

Dated: New York, New York
November 2, 2017

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: *Andrew Gordon/HMJ*
Andrew G. Gordon (agordon@paulweiss.com)
Geoffrey R. Chepiga (gchepiga@paulweiss.com)
Harry M. Jacobs (hjacobs@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Claimant Global Colocation Services LLC*