**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SKYWAVE NETWORKS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 1:24-cv-9650 |
| | Judge Georgia N. Alexakis |
| WILLIAM J. DISOMMA, PAUL A. GURINAS, MATTHEW HINERFELD, JOHN MADIGAN, JUMP TRADING, LLC, VIRTU FINANCIAL, INC., | |
| Defendants. | **JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.    THE COURT LACKS JURISDICTION. ............................................................... 1

    A.   Skywave's Claims Are Barred by the Collateral Attack Doctrine. .................................... 1

    B.   47 U.S.C. § 402 Vests the D.C. Circuit With Exclusive Jurisdiction Over Any Appeal From the License Renewal Skywave Has Challenged Before the FCC. .................................. 6

II.    SKYWAVE HAS NOT ALLEGED PROXIMATE CAUSATION. ..................................... 8

    A.   Skywave Is Not the Direct Victim of Actions That Caused Lost Profits to Commercial Traders. ................................................................................................... 8

    B.   Independent Actions of Third Parties Break the Proximate Causation Chain Alleged by Skywave. ........................................................................................... 12

    C.   Skywave Ignores That Its Lost Profits Are Purely Speculative. .................................... 13

III.    SKYWAVE HAS NOT ALLEGED BUT-FOR CAUSATION. ..................................... 13

IV.    SKYWAVE HAS NOT PROPERLY ALLEGED WIRE FRAUD ................................. 15

    A.   As a Matter of Law, the Wires to the FCC Allegedly Misrepresenting How Defendants Would Use the Licenses Are Not Wire Fraud ........................................................... 15

    B.   Skywave Cannot Rely Upon, and in Any Case Has Not Adequately Pled, a Fraud on Commercial Traders. ........................................................................................ 15

V.    SKYWAVE'S CLAIMS ARE TIME-BARRED. ................................................... 17

CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alter v. Fed. Commc'ns Comm'n*,
2025 WL 1454377 (D.D.C. May 21, 2025) ............................................................................3

*Am. Tel. & Tel. Co. v. Cent. Off. Tel., Inc.*,
524 U.S. 214 (1998) ...............................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................14

*At the Airport v. ISATA, LLC*,
438 F. Supp. 2d 55 (E.D.N.Y. 2006) .....................................................................................9

*Bridge v. Phoenix Bond & Indemnity Co.*,
553 U.S. 639 (2008) ..........................................................................................10, 11, 12, 16

*Cahnmann v. Sprint Corp.*,
133 F.3d 484 (7th Cir. 1998) .................................................................................................7

*Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*,
559 F.3d 671 (7th Cir. 2009) ..................................................................................18, 19, 20

*CE Design Ltd. v. Prism Bus. Media, Inc.*,
2009 WL 2496568 (N.D. Ill. Aug. 12, 2009), *aff'd*, 606 F.3d 443 (7th Cir.
2010) ......................................................................................................................................3

*Cleveland v. United States*,
531 U.S. 12 (2000) ...............................................................................................................15

*Cook, Inc. v. United States*,
394 F.2d 84 (7th Cir. 1968) ...................................................................................................7

*Corley v. Rosewood Care Center, Inc. of Peoria*,
388 F.3d 990 (7th Cir. 2004) ...............................................................................................16

*Corley v. Rosewood Care Ctr., Inc.*,
142 F.3d 1041 (7th Cir. 1998) .............................................................................................16

*Denberg v. U.S. R.R. Ret. Bd.*,
696 F.2d 1193 (7th Cir. 1983) ...............................................................................................7

*Devon Drive Lionville, LP v. Parke Bancorp, Inc*,
791 Fed. App'x 301 (3d Cir. 2019) ......................................................................................13

*Diliberti v. United States*,
    817 F.2d 1259 (7th Cir. 1987) ........................................................................19

*Eli Lilly & Co. v. Roussel Corp.*,
    23 F. Supp. 2d 460 (D.N.J. 1998) ..................................................................13

*F.C.C. v. ITT World Commc'ns*,
    466 U.S. 463 (1984) ..........................................................................................4

*Fornalik v. Perryman*,
    223 F.3d 523 (7th Cir. 2000) ........................................................................14

*Government App Solutions, Inc. v. City of New Haven*,
    2024 WL 1299993 (9th Cir. Mar. 27, 2024) ................................................12

*Hemi Group, LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010) ............................................................................................11

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) ....................................................................................9, 10

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
    610 F.3d 382 (7th Cir. 2010) ............................................................2, 18, 19

*Klehr v. A. O. Smith Corp.*,
    521 U.S. 179 (1997) ........................................................................................19

*Menzies v. Seyfarth Shaw LLP*,
    943 F.3d 328 (7th Cir. 2019) ........................................................................17

*National Broadcasting Company v. United States*,
    319 U.S. 190 (1943) ..........................................................................................5

*Oling v. Air Line Pilots Association*,
    346 F.2d 270 (7th Cir. 1965) ....................................................................5, 6, 7

*Olson v. Randstad HR Solutions of Delaware LLC*,
    2025 WL 400728 (7th Cir. Feb. 5, 2025) ....................................................14

*Paris Partners, L.P. v. Russo*,
    1995 WL 746585 (S.D.N.Y. Dec. 14, 1995) ................................................10

*Phoenix Bond & Indemnity Co. v. Bridge*,
    477 F.3d 928 (7th Cir. 2007) ........................................................................11

*Ratfield v. U.S. Drug Testing Lab'ys, Inc.*,
    __ F.4th __, 2025 WL 1670353 (7th Cir. June 13, 2025) ........................9, 12

*Rotella v. Wood*,
  528 U.S. 549 (2000) .......................................................................................................17, 18

*Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n*,
  799 F. Supp. 2d 44 (D.D.C. 2011) ..............................................................................4

*Self v. BellSouth Mobility, Inc.*,
  700 F.3d 453 (11th Cir. 2012) .....................................................................................2

*Smith v. AFSCME Council 31*,
  2025 WL 790855 (N.D. Ill. March 12, 2025) .........................................................14

*St. John's United Church of Christ v. City of Chicago*,
  401 F. Supp. 2d 887 (N.D. Ill. 2005), *aff'd*, 502 F.3d 616 (7th Cir. 2007) .............4

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*,
  990 F.3d 31 (1st Cir. 2021) ....................................................................................9, 11

## STATUTES

18 U.S.C.§ 1964(c) .......................................................................................8, 13, 16, 17

47 U.S.C. § 303(m)(1)(A) .............................................................................................2

47 U.S.C. § 402 ..........................................................................................................6, 7

47 U.S.C. § 414 .............................................................................................................7

## OTHER AUTHORITIES

47 C.F.R. § 5.111(a) ......................................................................................................2

**INTRODUCTION**

Skywave's Opposition confirms that its First Amended Complaint ("FAC") should be dismissed. Not only does this Court lack subject matter jurisdiction over Skywave's claims, but Skywave also fails plausibly to plead the elements of a RICO claim. RICO's proximate and but-for causation requirements bar Skywave's attempt to recover for alleged injuries it only could have incurred indirectly. And RICO's pattern of racketeering activity requirement cannot be satisfied by conduct that does not even constitute the purported predicate act of wire fraud. Finally, Skywave's claims are barred because they were filed years too late. Skywave cannot recover for its business disappointments under the guise of RICO; the Court should dismiss the FAC with prejudice.

**ARGUMENT**

**I.      THE COURT LACKS JURISDICTION.**

**A.  Skywave's Claims Are Barred by the Collateral Attack Doctrine.**

Skywave acknowledges, as it must, that the FCC has exclusive jurisdiction over spectrum regulation and "licensing decision[s]," Opp. at 8, including whether a Part 5 experimental license may be granted or renewed for an entity "engage[d] in [c]ommercial [t]rading," FAC ¶ 2. The FCC has granted and renewed Defendant 10Band's licenses six times since 2016. *Id.* ¶¶ 66, 67, 68, 72, 76, 80. The collateral attack doctrine therefore bars Skywave's request that this Court second-guess the use of FCC licenses or enjoin the further use of licenses expressly authorized and granted by the agency, as well as its effort to sidestep the prescribed process for appellate review of the agency's licensing decisions. *See* MTD at 7–11.

In an attempt to avoid dismissal, Skywave characterizes its claims and requested relief as having nothing to do with the FCC's licensing decisions. Specifically, it argues that the collateral attack doctrine does not apply because (i) the FAC does not *expressly* ask the Court to overturn any FCC decision; and (ii) the FCC does not have the power to decide RICO claims. Neither

argument is availing.

*First*, Skywave argues that its claims are not subject to dismissal under the collateral attack doctrine because it does not "ask this Court to overrule any FCC determination," but instead "seeks to enjoin **only the misuse of [FCC] licenses**." Opp. at 8, 10 (emphasis in original). Contrary to Skywave's characterization, these are one and the same thing. What falls within the scope of use permitted by experimental licenses and whether those licenses have been "misused" are determinations vested exclusively with the FCC. The FCC has already evaluated 10Band's applications and determined that 10Band is entitled to receive and use experimental licenses. Moreover, the FCC has sole ongoing authority to oversee a licensee's operations and "suspend the license of any operator upon proof sufficient to satisfy the Commission that the licensee has violated . . . any regulation made by the Commission." 47 U.S.C. § 303(m)(1)(A); *see also* 47 C.F.R. § 5.111(a) ("Stations may make only such transmissions as are necessary and directly related to the conduct of the licensee's stated program of experimentation . . . .").

Skywave ignores this regulatory structure and asks the Court to determine the scope of 10Band's licenses—what constitutes use and "misuse." Such an undertaking necessarily "depend[s] on the district court being able to collaterally review the correctness or validity of those" agency actions. *Self v. BellSouth Mobility, Inc.,* 700 F.3d 453, 462 (11th Cir. 2012). The correct venue for any such determination as to 10Band's most recent license grant is the FCC, where Skywave has in fact already filed a Petition for Reconsideration. *See* ECF No. 102-1 (Petition). Skywave's Petition asks the FCC to deny 10Band's renewal application for the same reason that Skywave asks this Court to enjoin "misuse" of 10Band's license: that 10Band "uses the experimental authorization for regular day-to-day trading." *Id.* at 1; *compare* FAC ¶ 120 ("Defendants violate and unlawfully use the HFT Enterprise's Experimental Licenses to engage in

Commercial Trading.").

In asking the Court to assess whether Defendants lied to the FCC by representing that 10Band qualified for an experimental license, Skywave necessarily asks this Court to overrule the FCC's determination that 10Band *did so qualify.* This is, plainly and without disguise, an improper collateral attack. *CE Design Ltd. v. Prism Bus. Media, Inc.*, 2009 WL 2496568, at *12 (N.D. Ill. Aug. 12, 2009) (claim is impermissible collateral attack where it "raise[s] the same issues and seek[s] the same relief in substance" as FCC proceedings), *aff'd*, 606 F.3d 443 (7th Cir. 2010). Rather than engage with *CE Design* and Defendants' other cited cases, the Opposition summarily declares that Skywave's claims do not "run afoul of" them. Opp. at 9–10. That argument cannot stand. It is clear that the FAC does, in fact, "raise the same issues and seek the same relief in substance" as the Petition, "ask[s] this Court to substantively interpret or apply" the FCC's most recent license grant (as well as prior license grants that Skywave never even tried to challenge), "depend[s] on the district court being able to collaterally review the correctness or validity of" those grants, and raises issues that are "necessarily intertwined with the factual setting" of the grants. *Cf.* Opp. at 9–10.

Indeed, the Opposition confirms that Skywave's entire theory of liability depends on whether the Part 5 experimental licenses granted and renewed by the FCC six times since 2016 have been "misused." FAC ¶¶ 2, 4, 51, 103, 116, 130, 133, 135, 149–50, 157, 167, 171, 185; Opp. at 1–5, 7, 9–11, 20, 21, 30, 34. If the licenses have not been "misused," then there is no basis for any of Skywave's claims, nor for its request to enjoin alleged unauthorized operations of the experimental licenses repeatedly granted and renewed by the FCC. Whether the licenses have been "misused" is a determination vested exclusively with the FCC. *See, e.g.*, *Alter v. Fed. Commc'ns Comm'n*, 2025 WL 1454377, at *2 (D.D.C. May 21, 2025) (dismissing "challenge to the FCC's

decision to grant or fail to revoke a license" because "this Court cannot review FCC orders related to licensing" in light of "Congress['] design[] [of] a specific process for judicial review of FCC decisions."). Thus, the FAC is "intertwined" with those determinations and must be dismissed.

*Second*, Skywave argues that its claims are not subject to dismissal as collateral attacks because "the FCC lacks authority to adjudicate Skywave's RICO claims." Opp. at 14. Because Skywave has chosen to bring a RICO claim based on wire fraud, the Opposition reasons, the collateral attack doctrine does not apply unless Defendants can "identify [] any FCC decisions or orders permitting Defendants to engage in the wire fraud alleged in this case from which Skywave could appeal." Opp. at 12. This is incorrect as a matter of law. Skywave fundamentally misunderstands the collateral attack doctrine, which focuses not on how plaintiffs style their claims but on whether, "[i]n substance," district court complaints "raise[] the same issues" as FCC actions. *F.C.C. v. ITT World Commc'ns*, Inc., 466 U.S. 463, 468 (1984). Courts have consistently rejected Skywave's conception of jurisdiction, noting that "there is not reason to believe 'that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint.'" *St. John's United Church of Christ v. City of Chicago*, 401 F. Supp. 2d 887, 902 (N.D. Ill. 2005), *aff'd*, 502 F.3d 616 (7th Cir. 2007) (citation omitted). Thus, courts do not look to a plaintiff's cause of action and comb the administrative record for any mention of the cause of action—in this case, alleged "wire fraud." *Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n*, 799 F. Supp. 2d 44, 51 (D.D.C. 2011) ("[T]he court 'must look to the true nature of the plaintiffs' claims, not how plaintiffs characterize it.'" (citation omitted)). Instead, "the question to be determined in ruling on the motion to dismiss is whether this case raises the same issues that are pending before the FCC and whether it calls into question the validity of an FCC order"—not whether it raises the same *causes of action* pending before the FCC. *Id.* That principle mandates dismissal of Skywave's

claims.[1]

Indeed, the Seventh Circuit has long held that how a plaintiff styles its cause of action does not determine the applicability of the collateral attack doctrine. *Oling v. Air Line Pilots Association* is instructive. There, a putative class of United Airlines employees challenged the employee seniority integration list set out by the Civil Aeronautics Board ("CAB") as part of the Board's approval of an airline merger. 346 F.2d 270, 272 (7th Cir. 1965). The employees first petitioned CAB to vacate the list for failure to integrate seniority in a fair and equitable manner. *Id.* at 274. After CAB entered an order dismissing the petition, the plaintiffs filed suit in district court alleging violations of the Railway Labor Act. *Id.* The plaintiffs did not appeal the CAB order, despite the fact that Section 1006 of the Federal Aviation Act "prescribes a direct and exclusive method of review" for CAB orders by the federal appellate courts. *Id.* at 276.

Relying on the collateral attack doctrine, the Seventh Circuit upheld the district court's dismissal of the case for lack of jurisdiction. On appeal, the *Oling* plaintiffs—like Skywave— argued that they could maintain a district court suit because the agency could not hear claims for violation of the law that the plaintiffs had sued under. *Id.* at 277 (arguing that "[t]he CAB did not have jurisdiction to deal with [Railway Labor Act] claims" and could not "provide[] the kind of relief which plaintiffs must have in order to remedy the Railway Labor Act violations here involved"). Nonetheless, the *Oling* court confirmed that the plaintiffs' lawsuit was an impermissible collateral attack, regardless of the plaintiffs' chosen cause of action. The court found

---

[1] Skywave's citation to *National Broadcasting Company v. United States* is inapposite. The Court's comment there that the FCC "was not attempting to administer the antitrust laws" came in the course of holding that the FCC could deny a station license on "public interest" grounds even if the station's misconduct was "an unconvicted violation of the anti-trust laws." 319 U.S. 190, 223 (1943). In other words, the fact that conduct implicated antitrust laws did not divest the FCC of the authority to issue an order regarding the conduct. If anything, *National Broadcasting* supports the proposition that the FCC can consider questions like antitrust violations and other alleged misdeeds when reviewing license applications and, therefore, has exclusive jurisdiction over the question of whether an FCC license is being "misused."

it irrelevant that the lawsuit included new allegations and allegations "couched in different phraseology." *Id.* at 277–78. What mattered was that the lawsuit and CAB petition both "rest[ed] on the premise that the seniority integration approved by the Board was not accomplished 'in a fair and equitable manner.'" *Id.* For that reason, the court upheld dismissal due to the similar "heart of plaintiffs' contention[s]." *Id.* at 278.

*Oling* compels dismissal of this lawsuit. In both the FAC and the lone Petition for Reconsideration that Skywave has timely filed, Skywave's core complaint is that 10Band is misusing FCC licenses for daily commercial trading. And in both the FAC and the Petition, Skywave seeks to prevent use of the FCC license for daily "commercial trading." *E.g.,* FAC ¶¶ 1–2, 120, Prayer for Relief; ECF No. 102-1 (Petition) at 1, 7. The additional allegations contained in Skywave's complaint are "merely subsidiary to and offered in support of [this] principal claim." *Oling*, 346 F.2d at 278. Accordingly, the FAC is an impermissible collateral attack over which this Court lacks jurisdiction. Skywave's invocation of the RICO Act cannot alter this conclusion.

**B.     47 U.S.C. § 402 Vests the D.C. Circuit With Exclusive Jurisdiction Over Any Appeal From the License Renewal Skywave Has Challenged Before the FCC.**

Skywave's argument regarding the interpretation of 47 U.S.C. § 402 fares no better. As a threshold point, Section 402 cannot vest this Court with jurisdiction now; the debate created by Skywave is only over which federal court may hear an appeal brought by Skywave *after* Skywave exhausts its remedies at the FCC. As previously explained, Skywave is time-barred from challenging all but one of the licensing decisions at issue here, and for the one remaining decision, Skywave must first exhaust its administrative remedies. MTD at 10–11.

But jurisdiction will *never* be proper in this Court for Skywave to challenge Defendants' use of its license. The Opposition claims that "[t]he plain language of § 402(b) does ***not*** provide the D.C. Circuit with exclusive jurisdiction over appeals from FCC decisions." Opp. at 12

6

(emphasis in original). Skywave seems to be alone in this view. The Opposition concedes (as it must) that the D.C. Circuit "interpret[s] § 402(b)'s grant of jurisdiction to the D.C. Circuit as 'exclusive,' depriving other courts of jurisdiction over review of FCC decisions." *Id.* at 13 n.5. Skywave rebuts this by stating that D.C. Circuit decisions are not binding on this Court—and then fails to cite a single in-circuit case that analyzes Section 402(b). *Id.* Remarkably, the Opposition fails to discuss the relevant Seventh Circuit authority that states unequivocally: "Although the language of this provision has been modified by Congress over the years until it has evolved into the present Sec. 402(b), courts"—including the Seventh Circuit—"have consistently held that the Court of Appeals for the District of Columbia has exclusive jurisdiction over cases that fall within the scope of the provision." *Cook, Inc. v. United States*, 394 F.2d 84, 86 (7th Cir. 1968).[2]

Finally, after failing to rebut binding Seventh Circuit authority that dooms its case, in a last-ditch attempt to salvage its plea for jurisdiction, Skywave argues (also in the face of the same binding precedent to the contrary) for concurrent jurisdiction between the FCC and this Court. Opp. at 15–16. Skywave relies on the Communications Act of 1934's savings clause, which states that "the provisions of this chapter are in addition to such remedies" "now existing at common law or by statute." 47 U.S.C. § 414. But that general clause cannot be read to overrule "the well settled principle that collateral attacks upon administrative orders are not permissible." *Oling*, 346 F.2d at 277. The Seventh Circuit has cautioned that courts should avoid interpretations of Section 414 that would "effectively nullify [] provisions of the Communications Act," such as "interpretations that would empower state courts to gut the federal regulatory scheme or would place [a common] carrier under inconsistent obligations." *Cahnmann v. Sprint Corp.,* 133 F.3d 484, 488 (7th Cir.

---

[2] Even if there was any remaining ambiguity (and there is not), "where it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter." *Denberg v. U.S. R.R. Ret. Bd.*, 696 F.2d 1193, 1197 (7th Cir. 1983).

1998). So, too, the savings clause cannot be read to upset the exclusive spectrum authority which Congress gave to the FCC and leave entities such as Defendants open to inconsistent rulings from collateral attacks. *See Am. Tel. & Tel. Co. v. Cent. Off. Tel., Inc.*, 524 U.S. 214, 227–28 (1998) ("In other words, the act cannot be held to destroy itself."). Indeed, such an outcome would directly conflict with *Oling* and the substantial body of additional precedent making clear that end-runs around the exclusive review process set out in the Communications Act are not permissible. Accordingly, this Court lacks jurisdiction to hear Skywave's claims.

## II. SKYWAVE HAS NOT ALLEGED PROXIMATE CAUSATION.

The FAC fails to allege proximate causation required by 18 U.S.C. § 1964(c). According to its own allegations, Skywave was not the direct victim of the alleged racketeering. Its Opposition only confirms this. First, Skywave incoherently suggests that it somehow suffered a "direct" injury because Defendants allegedly caused *someone else* to lose profits in trading financial instruments and eventually to go out of business. Second, it argues that mere rumors of Defendants' use of the shortwave licenses "[s]pooked" Trader 1 and other potential business partners, causing them not to partner with Skywave, which in turn prevented it from developing its business. Under either theory, any injury to Skywave is, by definition, indirect.

### A. Skywave Is Not the Direct Victim of Actions That Caused Lost Profits to Commercial Traders.

Skywave has repeatedly alleged that the direct victims of the supposed fraudulent scheme were Defendants' trading competitors, not Skywave. MTD at 16–17. The scheme was to "leverage the speed of shortwave connections and *profit from Commercial Trading . . . at [Defendants']* competitors' expense." FAC ¶ 52 (emphasis added); *see also id.* ¶¶ 23, 103, 109, 193. Tellingly, Skywave's brief avoids mention of these specific allegations of the FAC, but in the end is forced to admit that the direct harm fell on "the Commercial Trading market," Opp. at 30, that is,

Defendants' trading competitors, and that "Defendants harmed third-party traders," *id.* at 6. Skywave admits that it was not a trader. *Id.* at 6 n.2.

Skywave apparently believes that Defendants' speed-advantage profits put some traders—it only names one[3]—out of business. *See* FAC ¶¶ 156–72. This is, on its face, an admission that the any harm to Skywave was derivative of the injury to the firm(s) that was (or were) "ultimately forced to dissolve . . . ." *See* FAC ¶ 171. The existence of an intermediate financial victim—the defunct trading competitors—necessarily means that Skywave is not the direct victim. *See* MTD at 12–14; *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 274 (1992); *Ratfield v. U.S. Drug Testing Lab'ys, Inc.*, --- F.4th ---, 2025 WL 1670353, at *3 (7th Cir. June 13, 2025); *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35 (1st Cir. 2021); *see also Direct*, Cambridge Dictionary ("direct" means "without anyone or anything else being involved or between").[4] It matters not that Skywave believes it may have been able to receive investments or make profits from the trading activities of these *other companies* in an alternate universe where 10Band had no experimental licenses. *See* Opp. at 18–19; *At the Airport v. ISATA, LLC*, 438 F. Supp. 2d 55, 63 (E.D.N.Y. 2006) (plaintiff in joint venture failed to satisfy RICO proximate cause element because plaintiff's claim of revenue loss was "[d]erivative" of harm to joint venture itself).

In an effort to undermine the direct-injury requirement, Skywave engages in transparent attempts to rewrite the key cases. The Supreme Court in *Holmes* held that the stockbroker's customers could not establish RICO proximate causation because there was a directly injured party—the stockbroker—leaving the customers one step removed from the alleged wrong. In so holding, the Court relied on three factors: (i) the difficulty in ascertaining the amount of damages

---

[3] Skywave never says that this or any other trading firm that was supposedly driven out of business would have hired Skywave, only that as a result of that firm (or unknown others) being defunct "Skywave has . . . been unable to license its shortwave network technology." FAC ¶ 156.

[4] https://dictionary.cambridge.org/us/dictionary/english/direct (accessed June 20, 2025).

attributable to the violation as opposed to other, independent factors; (ii) the need to apportion damages among direct and indirect victims; and (iii) the fact that the directly injured victims can be counted on to vindicate the law. 503 U.S. at 269, 273. Skywave dismisses the three-factor analysis as mere "generic policy arguments" that can be safely ignored, Opp. at 22, surely an odd way to treat Supreme Court precedent. Instead, it offers a unique reading: that *Holmes* turned solely on the risk of upsetting priorities in bankruptcy. Opp. at 18. According to Westlaw, *Holmes* has been cited in 2,251 cases,[5] but Skywave has not identified a single case supporting this reading, and we have found none. This is hardly surprising because *Holmes* merely identified relative liquidation priorities as a "further concern" *that applies in liquidation cases*. 503 U.S. at 274; *see Paris Partners, L.P. v. Russo*, 1995 WL 746585, at *2 (S.D.N.Y. Dec. 14, 1995) (in insolvency cases "there is the added problem" of circumventing relative priority of its claim).

Contrary to Skywave's suggestion, *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), did not undo the *Holmes* proximate-causation analysis. To the contrary, it explicitly relied on it. There, defendant tax-lien buyers lied to Cook County to get deeds, and the plaintiff competitors were the first and only parties who lost money when false affidavits skewed the county auctions. The issue decided in *Bridge* was whether a RICO mail fraud plaintiff "must plead and prove that *it* relied on the defendant's alleged misrepresentations." 553 U.S. at 641 (emphasis added). Proximate causation was discussed in *Bridge* in connection with the defendant's argument that the plaintiff could not be the directly injured party because it did not rely on the misrepresentation to Cook County. In rejecting that argument, the Supreme Court explicitly *applied* the *Holmes* factors to find that the competitors—the first and only financially injured victims—established proximate causation: "[U]nlike in *Holmes* and *Anza,* there are no

---

[5] Last visited June 20, 2025.

independent factors that account for [plaintiff's] injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue." *Id.* at 639. *Bridge* is thus a straightforward application of the *Holmes-Anza* rule in a situation where the party receiving the misrepresentation is not the first financially harmed party. *See Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 931 (7th Cir. 2007) (Cook County not the direct victim of the fraud because it "did not lose even a penny").

Skywave's reading of *Sterling Suffolk Racecourse* is just as fanciful. There, the potential real estate partner (Sterling) of a casino company (Mohegan) that could not get a gambling license sued the winning gambling license bidder under RICO. The court applied the "three functional factors" from the Supreme Court's RICO proximate-cause jurisprudence and determined that the disappointed casino, not the real estate owner, was the "directly injured" party. 990 F.3d at 36–37. As the court explained:

> Sterling's claim "go[es] beyond the first step" of injuries from the conspiracy because it is entirely derivative of Mohegan's injury. Sterling is in the same position as any third-party business which hoped for a major contract from the Mohegan casino project, and lost that potential for business revenues when Mohegan lost the application bid.

*Id.* at 36. Skywave ignores this holding and argues that what actually matters is that the Sterling-Mohegan agreement imposed conditions "that may have excused performance," rendering it contingent. Opp. at 20. In fact, *Sterling* relied explicitly on the principle established in *Hemi Group, LLC v. City of New York, N.Y.* that "[a] link . . . that is 'too remote,' 'purely contingent,' *or* 'indirec[t]' is insufficient" to show causation. 990 F.3d at 35 (quoting *Hemi Grp.*, 559 U.S. 1, 9 (2010)). Although one of these would suffice, the First Circuit specifically found that Sterling's injury met all three criteria, namely, that it was indirect and "remote" and "contingent." 990 F.3d at 36. The same is true here. *See* MTD at 21.

11

**B.      Independent Actions of Third Parties Break the Proximate Causation Chain Alleged by Skywave.**

Skywave's proximate causation theory regarding alleged "[s]pooked" potential business partners founders for an additional reason, namely, that the causal chain is broken by independent intervening acts and decisions of third parties. As Skywave admits, its "partnership[s] with its investor and its trading firm partner faltered in 2017 and 2020, respectively, because of rumors that FCC Experimental Licenses for shortwave transmissions might be misused for commercial purposes . . . ." Opp. at 3. Specifically, these rumors "[s]pooked" Investor 1 and Trader 1, and although it found a new investor, "*Skywave was unable to bring on a new trading partner, which brought its network development to a halt.*" *Id.* at 4 (emphasis added). In other words, the rumors affected its partners, who made a decision to get out, and that in turn affected Skywave's ability to proceed.[6] Those actions (among others) by third parties break any proximate causation chain related to the injuries Skywave asserts, including its purported "inability to complete its network," "lost income from its trading partnership," and "sunk costs" consisting of the money that Investor 1 had fronted it. *See* Opp. at 6, 22.

Intervening actions and decisions between a defendant's alleged misrepresentations and the harm to a putative plaintiff—whether the intervening actor is another business, a government regulator, the plaintiff itself, or (as here) all of these—defeat a claim of proximate causation under RICO. *Bridge*, 553 U.S. at 659; *Ratfield*, 2025 WL 1670353, at *3; MTD at 18–21. Skywave does not so much as acknowledge the black letter law that an intervening action cuts off proximate causation. It ignores *the holdings* of the cases establishing this principle, like *Government App Solutions, Inc. v. City of New Haven*, 2024 WL 1299993, at *2 (9th Cir. Mar. 27, 2024) ("lawful

---

[6] Skywave also ignores that its own decision to allow Trader 1 and Investor 1 to exit the partnership was an additional independent, intervening action. *See* FAC ¶¶ 137, 139.

actions, like . . . choosing not to do business with a company, can serve as [an] *independent factor*[] rendering the purported injury too indirect from the predicate RICO acts" (emphasis added)); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 485 (D.N.J. 1998) ("injury result[ed] from many *intervening acts and causes*," including the FDA's approval (emphasis added)); and *Devon Drive Lionville, LP v. Parke Bancorp, Inc*, 791 Fed. App'x 301, 306 (3d Cir. 2019) (regulators were "*intervening actors* who [broke] the chain of causation" (emphasis added)).

Instead, Skywave offers its own reinterpretation of *some* of these cases, claiming that they turned solely on whether someone else higher on the causal chain was a "better" plaintiff. Opp. at 23 & n.8. That is simply made up. No court has ever suggested proximate causation exists with respect to a remote victim unless there is a "better plaintiff"[7] or that a plaintiff who is at the end of a series of intervening acts and independent decisions meets Section 1964(c)'s requirements.

### C. Skywave Ignores That Its Lost Profits Are Purely Speculative.

There is yet another insurmountable hurdle to Skywave establishing proximate causation here: the lost profits Skywave claims are purely speculative. There are a series of contingent events that stand between Defendants' alleged actions and Skywave's profits. *See* MTD at 21. Even if Skywave had applied for and gotten an FCC license, completed its network, commercialized its technology, and found clients, all of which is speculative, its assumption that profits would follow is pure conjecture.

### III. SKYWAVE HAS NOT ALLEGED BUT-FOR CAUSATION.

Defendants' opening brief establishes that Skywave cannot establish but-for causation because: (i) the license it says it lost out on—a never-before-issued hybrid public-

---

[7] Even if that were the rule, which it is not, it would not avail Skywave because Trader 1 and the other competitive traders who supposedly lost profits at the hands of Defendants would clearly be "better" plaintiffs on Skywave's own allegations.

programming/private-data authorization license—does not exist in the FCC's licensing regime; (ii) every materially similar hybrid application the FCC has actually reviewed has been rejected; and (iii) Skywave never even submitted a hybrid application of its own. MTD at 22–24.

Skywave's response is two-fold. First, it asks the Court to assume as a fact that it could have designed and obtained approval for a bespoke hybrid FCC license based on an allegedly favorable staff conversation a decade ago. *See* Opp. at 24–25. That is the definition of speculation, which is not permitted under the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Olson v. Randstad HR Solutions of Delaware LLC*, 2025 WL 400728, at *2–3 (7th Cir. Feb. 5, 2025). Second, it says the Court cannot take judicial notice of the FCC's final orders on similar hybrid licenses, which carry the force of law, because they somehow constitute a legal argument. Opp. at 25. This makes no sense. At issue on the motion to dismiss is the question of the plausibility of Skywave's claim that it would be granted a hybrid license. That factual claim is rendered implausible by the decisions of the FCC rejecting such license applications as inconsistent with the FCC Act. "It is well-established that executive and agency determinations are subject to judicial notice." *Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000). Accepting Skywave's argument would mean that courts also could not take judicial notice of the fact of prior decisions of other Article III courts, for example, in determining that an issue has already been litigated. The notion is preposterous.

Skywave's citation of what it incorrectly refers to as "this Court's decision" in *Smith v. AFSCME Council 31*, 2025 WL 790855 (N.D. Ill. March 12, 2025), is inapt. In that case, Judge Wood held only that a party could not introduce an arbitration award to establish that the award was so well reasoned that an appeal of the decision would have been futile. *Smith* says nothing about the situation here where the *fact* of the FCC's decisions highlights the implausibility of

Skywave's factual assertion that it would have been granted a *sui generis* hybrid broadcast license.

## IV.    SKYWAVE HAS NOT PROPERLY ALLEGED WIRE FRAUD.

### A.    As a Matter of Law, the Wires to the FCC Allegedly Misrepresenting How Defendants Would Use the Licenses Are Not Wire Fraud.

As explained in Defendants' Motion, the object of a wire fraud must be money or property, not a government license. MTD at 24–26. The FAC repeatedly alleges that the wire fraud scheme consisted of lying to the FCC with the object of unlawfully obtaining shortwave experimental licenses. *See, e.g.*, FAC ¶¶ 1, 2, 4, 103–04, 106, 116–18, 179–80. To take just one example, Skywave alleges: "Defendants . . . devised and engaged in a scheme to defraud the FCC and the Commercial Trading market by intentionally making false statements, false promises, or material misrepresentations to the FCC over interstate wires *for the purpose of obtaining shortwave Experimental Licenses* for Commercial Trading." FAC ¶ 104 (emphasis added).

Skywave recognizes that *Cleveland v. United States*, 531 U.S. 12 (2000), holds that a scheme to obtain a government license is not wire fraud because a license is not "property" within the meaning of those statutes. Opp. at 27. However, it tries to distinguish *Cleveland* by suggesting that despite its allegations that the object of the scheme here was to obtain the license (which is not property), Defendants' ultimate hope was to make money using it. That is no distinction at all. In *Cleveland* and the other licensing cases (*see* MTD at 25–26), the defendants lied to get licenses, not to frame them on the wall, but to make money. Acceptance of Skywave's argument would eliminate the distinction between a government license and money or property.

### B.    Skywave Cannot Rely Upon, and in Any Case Has Not Adequately Pled, a Fraud on Commercial Traders.

Skywave's alternative theory of wire fraud is that every trade made by Defendants using shortwave technology defrauded their trading competitors, causing the competitors to lose money trading. FAC ¶¶ 103, 109, 116–25, 157, 165, 167–71. While Skywave admits that it has never

traded, Opp. at 6 n.2, it asserts as violations of the wire fraud statute trades that hurt third parties as its pattern of racketeering. This runs headlong into Section 1964(c), which requires that a person suffer an injury to "*his* business or property." 18 U.S.C. § 1964(c) (emphasis added).

It is true that when a RICO plaintiff has himself been injured by predicate acts, he is allowed to point to similar injuries to others to establish the continuity element of a "pattern of racketeering." *See, e.g.*, *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 997 (7th Cir. 2004) ("*Corley II*"). But there is no case holding that a RICO plaintiff can plead nothing more than a series of predicate frauds on third parties. Contrary to Skywave's argument, *Bridge*, 553 U.S. 639, does not so hold. *Bridge* only says that the plaintiff need not have relied on the misrepresentations to a third party, not that it need not have been directly harmed.

Even pretending Skywave could assert a RICO claim based on injuries to third parties, its arguments fail. As Defendants' brief shows, the FAC fails the particularity requirement of Rule 9(b) because it never even says what the nature of the fraud on other traders is. MTD at 26–27. Skywave responds by cryptically asserting that "the thrust of Skywave's claims" is that trades were executed through interstate wires and "are incident to Defendants' scheme." Opp. at 30. That sentence explains exactly nothing about the *nature* of the scheme—that is, how traders were defrauded—much less the other elements—the "who, what, when, [and] where" of the alleged fraud. MTD at 26–27.[8]

The most that Skywave can muster is that Rule 9(b)'s requirements can sometimes be relaxed where a fraud is alleged against third parties and the necessary information is exclusively in the hands of the defendant. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th

---

[8] Skywave also veers off on a tangent about how the actual wire transmission need not be fraudulent if it is in furtherance of a fraudulent scheme. Opp. at 29–30. That is a true (but irrelevant) statement of the law. It does nothing to justify a wire fraud complaint that fails to explain even the nature of the fraud against the victims.

Cir. 1998) ("*Corley I*"). *Corley I* is nothing like this case. There, the plaintiff had properly pled multiple predicate acts of fraud committed against him and also generally identified the content of allegedly fraudulent communications made to other nursing home residents, but he could not identify the specific time or place, or which individuals received the communications. Here Skywave has pled no fraud of any kind on itself. It has not even described the nature of the fraud on the competitive traders, let alone any of the particulars. It is not asking for Rule 9(b) to be relaxed, but rather entirely ignored.

Finally, Skywave's response to the bar in Section 1964(c) against pleading wire fraud involving the purchase or sale of securities, Opp. at 31–32, is incomprehensible. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 334–35 (7th Cir. 2019), indeed holds that the bar only applies where the scheme to defraud and the purchase or sale of securities coincide. Skywave says that connection does not exist here because, it claims, the alleged scheme to defraud the commercial traders here has nothing to do with the trades (the purchases and sales themselves), but with the improper use of the license. Opp. at 32. But this is gibberish: commercial traders could have suffered no financial injury from the mere issuance of the FCC licenses to Defendants. Any injury to them would necessarily be in connection with the trades—that is, the purchase and sale of securities as counterparties to trades with Defendants.

## V. SKYWAVE'S CLAIMS ARE TIME-BARRED.

Skywave's FAC and Opposition admit facts requiring dismissal of its October 2024 claims as untimely under RICO's four-year statute of limitations, which begins to run "when a plaintiff knew or should have known of his injury," *Rotella v. Wood*, 528 U.S. 549, 553–54 (2000); *Sidney Hillman Health Ctr. Rochester v. Abbott Laby's*, 782 F.3d 922, 926 (7th Cir. 2015):

- Skywave first suffered the injury about which it complains in **2017**, when "Investor 1" left the partnership with Skywave. FAC ¶¶ 136–37; Opp. at 3–4.

- In **2017,** Investor 1 expressly cited as the reason for its departure that the Skywave partnership would not be able to compete with an "entity . . . us[ing] 10Band's shortwave transmitter under an Experimental License for Commercial Trading." FAC ¶ 136.

- 10Band is the alleged unlawful enterprise. FAC ¶ 1.

- Around "**December 2016** … Skywave and its investors heard rumors in the industry that Jump or Virtu (*both trading firms*) may be affiliated with 10Band." Dkt. 7, Compl. ¶ 60 (emphasis added); Opp. at 3 n.1 (not disputing accuracy of this allegation).

- All Defendants are identified in documents publicly available *before* **October 2020** as owners of 10Band or as acting on behalf of the alleged enterprise. MTD at 30–32 (detailing such publicly-available documents); Opp. at 33 (not disputing that these documents were publicly available before October 2020).

- Skywave had the ability to "monitor[] Defendants' signals . . . to confirm that Defendants were transmitting shortwave data signals," and in fact did so. FAC ¶ 149.

These undisputed facts are dispositive under *Rotella* and Seventh Circuit precedent. *See Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 676 (7th Cir. 2009) (affirming grant of 12(b)(6) motion to dismiss on statute of limitations grounds because RICO plaintiffs are "not allowed to bury their heads in the sand—to know you've been injured and make no effort to find out by whom is the very laxity that statutes of limitations are designed to penalize"). Skywave makes three arguments in an attempt to save its untimely claims. All are futile.

*First*, Skywave argues that, for the limitations clock to start running, it needed to know not only that it was injured but also "*who* caused the injury." Opp. at 33. But that is not a barrier to dismissal here. Skywave expressly pleads that, in 2017, it knew that 10Band—the alleged enterprise here—caused its injuries. FAC ¶¶ 1, 136–37; Opp. at 3–4. The law does not require Skywave to know every member of that enterprise to bring its claim. *See Cancer Found.*, 559 F.3d at 674 (7th Cir. 2009) ("[T]he focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim."). In any event, as noted, Skywave clearly did have constructive knowledge, by October 2020, that all of the Defendants either owned or acted on behalf of 10Band.

*Second*, realizing it knew or should have known that all Defendants owned or acted on behalf of 10Band, Skywave also argues that its "knowledge about Defendants' use of 10Band as

the HFT Enterprise for Commercial Trading is what is relevant, not whether Skywave knew Jump Trading or Virtu were merely affiliated with 10Band." Opp. at 3 n.1. In other words, Skywave argues it is not enough for it to know that Defendants were behind the alleged enterprise that caused it harm, it must also have had constructive knowledge that the enterprise was being used for commercial trading. But Skywave pleads knowledge that Jump and Virtu were, at relevant times, commercial trading firms. Dkt. 7, Compl. ¶ 60; Opp. at 3 n.1. And it pleads that Investor 1 left its partnership in 2017 expressly because it thought that some entity would use 10Band's license "for Commercial Trading." FAC ¶¶ 136–37.[9] That is more than enough to demonstrate that Skywave knew or should have known of its claims more than four years before it filed suit. A RICO plaintiff must exercise reasonable diligence in investigating its potential claims. *See Cancer Found.*, 559 F.3d at 674; *Klehr v. A. O. Smith Corp.*, 521 U.S. 179, 194 (1997) ("In [the civil RICO] context, we conclude that 'reasonable diligence' does matter, and a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'").

*Third*, Skywave argues the limitations period could not run until it *confirmed* Investor 1's suspicion that the 10Band license was being used for commercial trading, and that this confirmation was not possible until 2022, when, it asserts, "the A7 tool became accessible" and "demonstrated that its prior investor's and trading firm partner's concerns were in fact a reality." Opp. at 2, 4. The law does not permit Skywave to sit on its hands for five years for someone to invent a tool to purportedly confirm what it already knew or should have known. Skywave "mistakenly contend[s] that a limitations period does not begin to run until the precomplaint investigation is complete." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010) (affirming grant of 12(b)(6) motion to dismiss on statute of limitations grounds);

---

[9] The FAC also pleads that other market participants left the commercial-trading market in the same 2017–2019 time period for the same reasons. *See* ¶¶ 157–72.

*see also Diliberti v. United States*, 817 F.2d 1259, 1263–64 (7th Cir. 1987) (Privacy Act's two-year statute of limitations began to run when the plaintiff heard "rumors . . . that the defendants might be maintaining a secret file on him," not when he "received confirmation from the government that it was indeed maintaining a file of secret records," as the latter "holding would essentially eliminate the purpose behind the statute of limitations").

In any event, Skywave alleges only that the A7 tool showed "*someone* was misusing Experimental Licenses for Commercial Trading." Opp. at 4 (emphasis added). This adds nothing to what Skywave concededly already knew—again, at minimum: that its partner left in 2017, citing potential use of 10Band's shortwave license for commercial trading, FAC ¶¶ 136–37; that its partners suspected *as early as 2017* that Jump or Virtu were affiliated with 10Band, Dkt. 7, Compl. ¶ 60 (emphasis added); Opp. at 3 n.1; and that Jump and Virtu, known trading firms, "were transmitting shortwave data signals," FAC ¶ 149. To bring the claims in the FAC, Skywave did not need to wait for a tool to be invented that would confirm that some unknown entity was indeed using shortwave technology for commercial trading. In sum, "[d]ismissal is appropriate [because] [Skywave] plead[ed] [it]self out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found*., 559 F. 3d at 674–75.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully submit that this matter should be dismissed in its entirety with prejudice.

20

Dated: June 20, 2025

Respectfully submitted,

/s/ Chris Gair

Neema Sahni (admitted *pro hac vice*)
J. Hardy Ehlers (admitted *pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
(424) 332-4757
nsahni@cov.com
jehlers@cov.com

Chris Gair (ARDC # 6190781)
Ingrid Yin (ARDC # 6339857)
GAIR GALLO EBERHARD LLP
1 East Wacker Drive, Suite 2600
Chicago, IL 60601
cgair@gairgallo.com
iyin@gairgallo.com
(312) 600-4900

Gerard J. Waldron (admitted *pro hac vice*)
COVINGTON & BURLING LLP
850 10th St NW
Washington, DC 20001
(202) 662-6000
gwaldron@cov.com

*Attorneys for Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, and Jump Trading, LLC.*

Robert Y. Sperling (ARDC #2688093)
Katherine B. Forrest (admitted *pro hac vice*)
Andrew G. Gordon (admitted *pro hac vice*)
Jessica S. Carey (admitted *pro hac vice*)
Kristina A. Bunting (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3148
rsperling@paulweiss.com
kforrest@paulweiss.com
agordon@paulweiss.com
jcarey@paulweiss.com
kbunting@paulweiss.com

*Attorneys for Defendant Virtu Financial, Inc.*