UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SKYWAVE NETWORKS, LLC, | |
| Plaintiff, | |
| v. | No. 24 CV 9650 |
| WILLIAM DISOMMA, et al., | Judge Georgia N. Alexakis |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Skywave Networks, LLC alleges that defendants William DiSomma, Paul Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC, and Virtu Financial, Inc. injured it through a years-long racketeering scheme that involved defrauding the Federal Communications Commission ("FCC") and misusing FCC licenses, all to gain an edge in their high-frequency trading network. [90]. Defendants have moved to dismiss Skywave's amended complaint. [101]. For the reasons set forth below, the Court grants their motion because it does not have subject matter jurisdiction over Skywave's claims.

I.  **Legal Principles**

In resolving a motion to dismiss brought under Rule 12(b)(1), Skywave bears the burden of proving that jurisdiction is proper and must allege facts sufficient to plausibly suggest that subject matter jurisdiction exists. *Silha v. ACT, Inc.,* 807 F.3d 169, 173–74 (7th Cir. 2015). In the context of a facial challenge to subject matter jurisdiction, the Court construes all factual allegations as true and draws all

reasonable inferences in Skywave's favor, but it need not accept legal conclusions or conclusory allegations. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–82 (2009)); *Silha*, 807 F.3d at 173–74. In the context of a factual attack on subject matter jurisdiction, the Court may consider and weigh evidence outside of the pleadings to determine whether it has the power to adjudicate this action. *Bazile v. Fin. Sys. of Green Bay, Inc.,* 983 F.3d 274, 279 (7th Cir. 2020).

The FCC has exclusive jurisdiction to grant, condition, and suspend broadcast licenses—including experimental licenses. 47 U.S.C. §§ 303(a), 303(g), 303(l), 303(m)(1)(A); 15 C.F.R. § 5.111(a); *see also In re NextWave Personal Commc'ns, Inc.,* 200 F.3d 43, 54 (2d Cir. 1999) ("The FCC's exclusive jurisdiction extends not only to the granting of licenses, but to the conditions that may be placed on their use."). Experimental licenses "allow[] greater flexibility for parties … to develop new technologies and services while protecting incumbent services against harmful interference." Press Release, FCC, Office of Engineering and Technology Announces Acceptance Of Applications for Program Experimental Licenses (Apr. 14, 2017), https://docs.fcc.gov/public/attachments/DA-17-362A1.pdf. The FCC limits their use to "experimentation," "product development," and "market trials," "with a view to the development of science or technique." 47 C.F.R. §§ 5.1(b), 5.5.

The United States Court of Appeals for the District of Columbia Circuit reviews appeals of the FCC's final licensing decisions. 47 U.S.C. §§ 402(b)(1)–(6) ("Appeals may be taken from decisions and orders of the Commission to the United

2

States Court of Appeals for the District of Columbia … [b]y any other person who is aggrieved or whose interests are adversely affected by any order of the [FCC] granting or denying any [licensing] application described in … this subsection."); *Maier v. FCC,* 735 F.2d 220, 224 (7th Cir. 1984); *see also Folden v. United States*, 379 F.3d 1344, 1346, 1359 (Fed. Cir. 2004); *N. Am. Cath. Edu. Programing Found., Inc. v. FCC,* 437 F.3d 1206, 1209 (D.C. Cir. 2006). Significantly, § 402(b)(6) allows a licensee's competitors to challenge the FCC's decision to grant the license, as competitors generally qualify as an "aggrieved" party with standing under the statute. *See FCC v. Sanders Bros. Radio Station,* 309 U.S. 470, 477 (1940); *Spectrum Five LLC v. FCC,* 758 F.3d 254, 259 n.7 (D.C. Cir. 2014).

"When Congress places review of an administrative decision in the court of appeals, district judges may not enjoin or penalize action that the agency has approved or that is the natural outcome of the agency's decision." *Ordower v. Off. of Thrift Supervision*, 999 F.2d 1183, 1188 (7th Cir. 1993).

## II.  Factual Background

The facts that follow come from Skywave's operative complaint.

In high-frequency trading, "where financial instruments, like stocks and futures, are traded at high frequency to take advantage of small but frequent changes in financial markets," every millisecond matters. [90] ¶ 28. High-frequency traders with the fastest networks dominate the best trades. *Id.* ¶ 27. Skywave sought to provide high-frequency traders with the fastest possible trades by building a network of shortwave radios that could execute trades across oceans. *Id.* ¶¶ 27, 31–35.

3

Skywave secured partners and an investor and developed plans to achieve the necessary commercial trading licenses from the FCC. *Id.* ¶¶ 38, 40–42.

But Skywave's hopes of building this innovative shortwave trading network were derailed when its investor learned that, in 2016, an entity known as 10Band had filed applications with the FCC for an experimental license to operate shortwave transmitters. *Id.* ¶¶ 136–39; *see also id.* ¶ 66 (FCC granted 10Band an experimental license that same year). 10Band is a subsidiary of New Line Networks LLC, and New Line Networks LLC is a joint venture between defendants Virtu and Jump Trading. *Id.* ¶ 86. Skywave's investor feared that 10Band's experimental license, though ostensibly not intended for commercial trading, would be misused for that purpose, thus giving a potential competitor to Skywave's network an unfairly acquired speed advantage. *Id.* ¶ 137. "Spooked" by this possibility, Skywave's investor—and later its partners, too—bowed out. *Id.* ¶¶ 137, 139; [108] at 4. Though Skywave persisted, its failure to bring aboard new partners eventually brought its business plans to a halt. [88] ¶ 140; [108] at 4.

The FCC has granted, modified, and extended 10Band's experimental licenses several times since 2016. [90] ¶¶ 64, 66–85. But according to Skywave, those licenses were all fraudulently obtained. More specifically, Skywave alleges that defendants lied to the FCC to obtain and maintain 10Band's experimental licenses; misused the experimental licenses for commercial trading, which then afforded defendants an unfairly acquired speed advantage when operating their high-frequency trading network; as a result, "spooked" Skywave's actual and potential partners and investors

4

from supporting Skywave's efforts to operate its high-speed shortwave trading network; and thus forced Skywave to cede its plans for commercial success. *See generally* [90]. Skywave presents these allegations as a violation of the Racketeer Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq. Id.* ¶¶ 173–96.

This lawsuit is not the first time Skywave has raised concerns over 10Band's experimental licenses. In September 2023, more than a year before filing the instant lawsuit, Skywave petitioned the FCC to reconsider its August 2023 renewal of 10Band's experimental license. [102-1]; [102-3]. 10Band opposed the petition, arguing that its activity under the license is consistent with FCC rules. [102-2]. As the Court understands the current state of affairs, Skywave's petition before the FCC remains pending. [102] at 6.[1]

### III. Analysis

To determine whether Skywave has challenged an FCC action improperly, and thus whether it can exercise subject matter jurisdiction over its complaint, the Court "must look to the true nature" of Skywave's claim—that is to say, its "root." *Folden*, 379 F.3d at 1359 n.13. Where a plaintiff "attempt[s] to obtain the same results and to place the same constraints on [the defendants] [that were] rejected by the agency in the exercise of its institutional expertise," and where the plaintiff's "claims are

---

[1] Skywave lodged its petition with the FCC's Office of Engineering Technology. [102-1] at 1. Any appeal of the Office of Engineering Technology's eventual order would go first to the full Commission, *see NTCH, Inc. v. FCC*, 877 F.3d 408, 412 (D.C. Cir. 2017) (requiring dismissal of petition as premature where the petition was filed after a decision by the FCC's Enforcement Bureau but before seeking review by the full Commission), and only afterwards through the judicial channels laid out in § 402, *see* 47 U.S.C. §§ 155(c)(4)–(7).

inescapably intertwined with a review of the [agency's] final decision," the plaintiff has improperly launched a collateral attack over which the district court lacks jurisdiction. *Otwell v. Ala. Power Co.,* 747 F.3d 1275, 1282 (11th Cir. 2014).

Skywave's amended complaint rests upon the premise that defendants lied to the FCC to obtain and renew 10Band's experimental licenses and that they then misused those licenses beyond their permissible, experimental purpose. *See, e.g.,* [90] ¶¶ 2, 51, 103, 116, 130, 133, 185. In Skywave's view, were it not for this fraud and misuse, Skywave's partners and investor never would have withdrawn their support, and Skywave's trading network would have gone forward. *Id.* ¶¶ 152–56. To remedy this injury, Skywave asks the Court to enjoin defendants from any further "misuse" of the licenses, allowing that any judicial order would permit 10Band to continue to use its experimental licenses for "actual experimental purposes." [108] at 8–10; *see also* [90] at 59.

But as defendants correctly contend, this proposed remedy constitutes an impermissible challenge to the FCC's licensing decisions. [102] at 8–9. At bottom, Skywave's amended complaint asks the Court to determine whether 10Band's licenses are for permissible experimental purposes and whether they were used within that scope. These are the same questions that the FCC answered when it granted, modified, and renewed 10Band's licenses under its statutory authority. *See* 47 U.S.C. § 303. The Court may not "call[] into question the validity of an FCC order." *Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n,* 799 F. Supp. 2d 44, 51 (D.D.C. 2011).

6

Sought-after remedy aside, Skywave's RICO case is predicated upon its claims that defendants repeatedly lied to the FCC (1) to obtain experimental licenses for which 10Band was never, in fact, qualified to obtain, and (2) by misusing 10Band's experimental licenses for commercial purposes. *See* [90] ¶¶ 179–85, 193–94. Even Skywave admits that it is asking the Court to "assess whether Defendants lied to the FCC." [108] at 8. But it is impossible for the Court to find merit in Skywave's allegations that defendants lied to the FCC to obtain 10Band's experimental licenses, and then used those licenses beyond their permissible scope, without disturbing FCC determinations—be they implicit or explicit—that neither premise is true.

Here's another way to consider the issue: If the allegations of fraud and misuse were to fall out of Skywave's amended complaint—*i.e.*, if the Court were to presume the granting, renewal, and use of the licenses lawful—then Skywave's complaint would only be that defendants properly held a business advantage over Skywave, and that Skywave found itself unable to compete on a level playing field. Without questioning the licenses' validity as a byproduct of fraud, and therefore challenging the FCC's actions, Skywave has no legal claim. Like the plaintiff in *Self v. Bellsouth Mobility*, 700 F.3d 453, 462 (11th Cir. 2012), Skywave has pled itself into a corner: If the FCC's decisions were correct, and if 10Band was properly awarded its experimental licenses (and had them renewed), then Skywave loses. But if the FCC's decisions were incorrect because 10Band lied or misused the licenses, then Skywave's claims "depend on [it] establishing that at least parts of the FCC's [orders] are wrong

7

as a matter of law or are otherwise invalid." *Id.* In other words, Skywave improperly seeks collateral review of the FCC's decisions in the district court.

Skywave pushes back against this characterization of its claims. It argues that the Court can resolve its RICO claims without acting contrary to any FCC decision and without considering "the propriety of any decision related to the Experimental Licenses." [108] at 8. It insists that resolution of its RICO claims "requires consideration of only Defendants' own misconduct." *Id.* The Court, however, is not bound by plaintiff's characterization of its own claims. *See Folden*, 379 F.3d at 1359 n.13. And a plaintiff may not evade jurisdictional requirements "by requesting the District Court to enjoin action that is the outcome of the [FCC's] order." *FCC v. ITT World Commc'ns,* 466 U.S. 463, 468 (1984). Instead, "the question to be determined in ruling on the motion to dismiss is whether this case raises the same issues that are pending before the FCC and whether it calls into question the validity of an FCC order." *Sandwich Isles Commc'ns,* 799 F. Supp. 2d at 51. For the reasons already set forth, this case does.

Nor does Skywave's attempt to "dress up [its] core challenge to a licensing decision" as a RICO claim help it "avoid the strict jurisdictional limits imposed by Congress." *Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008); *St. John's United Church of Christ v. City of Chicago,* 401 F. Supp. 2d 887, 902 (N.D. Ill. 2005), *aff'd,* 502 F.3d 616 (7th Cir. 2007). As *St. John's* explained, if a plaintiff's complaint in the district court alleges that it was injured by an agency order, and if an appellate court has exclusive authority to review that agency order, then the

8

plaintiff's complaint is "inescapably intertwined" with the appellate court's review. *Id.* It does not matter whether the claim was framed as a constitutional challenge or some other federal question: It must go to the appellate court. *Id.* Or as *St. John's* put it: litigants may not seek, "through careful pleading, to avoid the strict jurisdictional limits imposed by Congress." *Id.* Here, Skywave alleges that its business prospects were injured by the FCC's licensing decisions. It does not matter that Skywave has repackaged its claims in a RICO action: Its complaint is "inescapably intertwined" with its challenges to the FCC's licensing decisions, meaning the exclusive judicial forum for its grievance is the D.C. Circuit. 47 U.S.C. § 402(b).[2]

The Ninth Circuit's decision in *American Bird Conservancy* is similarly persuasive. 545 F.3d at 1190. There, the plaintiff ostensibly sued the FCC for violating the Endangered Species Act. *Id.* at 1191. But in its complaint, it objected to seven specific tower registrations. *Id.* at 1193. It criticized the FCC's decision to "continue to authorize operation of [the towers] in an unlawful manner." *Id.* The Ninth Circuit held that the plaintiff had merely "dress[ed] up [its] core challenge to a licensing decision" as a statutory claim. *Id.* at 1193–94. The two issues—the tower registrations and the FCC's compliance with federal environmental law—were so "inextricably intertwined" that the latter could not be decided without disturbing the former. *Id.* at 1193. Consistent with the Court's analysis above, the Ninth Circuit

---

[2] Skywave argues that, even if its amended complaint did challenge an FCC decision, the D.C. Circuit does not have exclusive jurisdiction over this case. *See* [108] at 12–13, 15–16. As defendants point out, this argument is premature, where Skywave does not claim to have exhausted its administrative remedies. [115] at 6.

held that under "Congress's carefully constructed system of review," the district court lacked subject matter jurisdiction over plaintiff's suit. *Id.* at 1193–95.

Significantly, Skywave already has placed the core issue in its complaint—defendants' purported deceit—before the FCC in its 2023 petition for reconsideration. [102-1]; [102-3]. There, Skywave challenged the FCC's renewal of 10Band's most recent experimental license and complained that the license renewal "should not have been granted" because 10Band "has completed its experiments and now uses the experimental authorization for regular day-to-day trading." [102-1] at 1.[3] Skywave now describes this petition as only "mention[ing] that 10Band seems to improperly use the license for 'day-to-day trading.'" [108] at 15. This is disingenuous. As the language of the petition repeatedly makes clear, *see* note 3, Skywave has asked the FCC to conclude that 10Band has intentionally misused the experimental licenses. It even provided an expert report substantiating this allegation. [102-3] at 9–14. By

---

[3] *See id.* at 3 ("[T]he application for renewal should not have been granted," as it "exceeded the bounds of the Commission's rule" on experimental radio licenses); *id.* (10Band claims that it seeks renewal of its experimental license "so that it may continue an almost seven-year experiment to further understand market potential and refine its customer facing data feed," but this explanation contrasts with its earlier assertions, which "contemplate[d] only private internal communications"—not a "customer" market); *id.* (10Band is not operating the facilities for their intended experimental purposes, but rather "as a regular full-time means of transmitting financial information to gain an edge in the financial markets"); *id.* at 6 (10Band operated a joint venture with defendants, where it "allowed [defendants'] unlicensed operations on the experimental licensed facilities," and therefore violated FCC rules, warranting denial of its experimental license renewal); *id.* ("For ten years, 10Band has used and continues to use the facilities day in and day out to conduct financial trades. After years of highly profitable production trading and market dominance … renewal of the experiment is not justified."); [102-3] at 2–3 (pointing to "24/7 duty cycles and regular transmissions" from 10Band's experimental site, indicating "that 10Band was not experimenting," but that it wrongfully "seeks to retain the experimental station to continue its daily practice of transmitting trade information"); *id.* at 4 ("10Band clings to its experimental authorization as a means to gain an edge in the financial markets in which it trades.").

putting defendants' alleged misconduct before the FCC, Skywave recognized that this issue is in the agency's wheelhouse. *See also* 47 U.S.C. § 303(m)(1)(A) (granting the FCC the "authority to suspend the license of any operator upon proof sufficient to satisfy the [FCC] that the licensee has violated … any regulation made by the [FCC]"). Repackaging its arguments to the FCC as RICO claims does not secure federal subject matter jurisdiction. *See St. John's United Church of Christ,* 401 F. Supp. 2d at 902.

Finally, the Court does not understand defendants to "argue that Skywave somehow should have brought its RICO claims to the FCC in the first instance." *Contra* [108] at 13. On this point, Skywave tries to find support in *National Broadcasting Company v. United States*, 319 U.S. 190, 222–23 (1943), but there, the Supreme Court held that the FCC could refuse to grant a license to an applicant suspected of violating antitrust laws. As defendants point out, *National Broadcasting Company* may support an argument (one not before the Court) that the FCC may consider claims of racketeering as part of its licensing decisions. *See* [115] at 5 n.1. It does not, however, support Skywave's position that this Court has jurisdiction to resolve its RICO claims because Skywave could not have brought its claims of racketeering to the FCC's attention.

## IV. Conclusion

For the above reasons, defendants' motion to dismiss the amended complaint [101] is granted. The Court has considered granting leave to amend; however, no

amendment would cure the lack of subject matter jurisdiction. The dismissal is without prejudice. Fed. R. Civ. P. 41(b)). Civil case terminated.

_____
Georgia N. Alexakis
United States District Judge

Date: December 2, 2025